[L.A. No. 31916. May 22, 1986.]

ELOISE COLEMAN et al., Minors, etc., Plaintiffs and Appellants, v. GULF INSURANCE GROUP et al., Defendants and Respondents.

784

786

## COUNSEL

King & Seligsohn, Stephen Scott King and Henry Seligsohn for Plaintiffs and Appellants.

Brown & Brown, Bradley A. Raisin, Leonard Sacks, Jean Corey, Al Schallau, Robert E. Cartwright, Wylie A. Aitken, Harlan Arnold, Glen T. Bashore, Ray Bourhis, Richard D. Bridgman, Edwin Train Caldwell, David S. Casey, Jr., Victoria De Goff, Douglas K. de Vries, H. Grieg Fowler, Sanford M. Gage, Ian Herzog, G. Dana Hobart, Stanley K. Jacobs, Harvey R. Levine, John C. McCarthy, Timothy W. Peach, Robert H. Sulnick, Arne Werchick and Stephen I. Zetterberg as Amici Curiae on behalf of Plaintiffs and Appellants.

Demler & Armstrong, Edison J. Demler and Robert W. Armstrong for Defendants and Respondents.

Latham & Watkins, Donald P. Newell, Milton A. Miller, Jeffrey A. Toder, Greines, Martin, Stein & Richland, Irving H. Greines, Alan G. Martin, Spray, Gould & Bowers, Daniel O. Howard, James S. Link, Horvitz & Levy, Ellis J. Horvitz, Michael R. Tyler, S. Thomas Todd, Howard Wollitz, Finley, Kumble, Wagner, Heine, Underberg, Manley & Casey, Fred J. Hiestand, Richard E. Bawden, Reynolds, Reider & Bawden, Robert F. Wilson and Wilson, Borror, Dunn & Scott as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

**GRODIN, J.**—Plaintiffs obtain a judgment against defendant, defendant appeals, and the parties settle while the appeal is pending. May plaintiffs then bring a new suit to recover additional damages against the defendant's insurer, claiming that the insurer was responsible for instigating the appeal, and that it did so knowing the appeal was without merit but in order to achieve delay and coerce settlement?

As we shall explain, while the prosecution of a frivolous appeal for the purpose of delay is clearly improper, the Legislature has provided a remedy for such frivolous and delaying conduct in section 907 of the Code of Civil Procedure,[1] which authorizes an appellate court in which a frivolous appeal is filed to assess "such damages as may be just" for such misconduct. Past cases applying section 907 have recognized that the assessment of damages in this context is a particularly delicate task because of the potential danger of improperly "chilling" valid appeals (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637 [183 Cal.Rptr. 508, 646 P.2d 179]), and section 907 leaves the determination of this matter to a reviewing court which is generally in the best position both to evaluate the frivolousness of the appeal and to gauge damages so as to avoid the deterrence of legitimate appeals. Although plaintiffs proffer a number of theories to support their attempt to obtain damages for an improper appeal in a new and separate lawsuit, rather than through section 907, we conclude that none of the theories can be sustained. Accordingly, we affirm the trial court judgment in favor of defendant.

## I.

Plaintiffs are the survivors of William Coleman who drowned in a swimming facility owned and operated by the City of Monrovia in August 1975. After the accident, plaintiffs brought a wrongful death action against the city, and a jury found the city liable and awarded plaintiffs $350,000 in damages. Following denial of its motion for a new trial, the city appealed.

Sometime after filing the appeal, the city's insurer, Gulf Insurance Group (Gulf), offered plaintiffs an amount equal to less than one-half of the judgment award to settle the case. Plaintiffs declined to settle. Later, in January 1982, Gulf tendered and plaintiffs accepted $300,000 in full settlement of the judgment. As a result, the appeal was dismissed.

Six months later, plaintiffs filed the present action against Gulf, seeking to recover additional compensatory and punitive damages on the basis of Gulf's conduct in the original appeal. The complaint alleged that Gulf controlled all aspects of the initial proceedings, including appeal and settlement, and that when Gulf instituted the appeal it had no reasonable basis for believing that the judgment would be reversed but simply desired to postpone payment of the judgment. The complaint claimed that Gulf had two objectives in mind. First, the complaint alleged that Gulf, knowing that plaintiffs were of modest financial means and had lost their principal source of financial support with the death of William Coleman, hoped by postponing payment to force plaintiffs to settle for a fraction of the judgment. Second, the

---

[1]Unless otherwise noted, all statutory references are to the Code of Civil Procedure.

complaint alleged that Gulf intended to capitalize during the pendency of the appeal on the significant differential between the statutory rate of interest and the general market rate. The complaint suggested that because Gulf was not required to post an appeal bond as a result of the city's status as a public entity, Gulf could invest the $350,000 at the general market rate of over 15 percent while having to pay plaintiffs only 7 percent during the pendency of the appeal, thereby depriving plaintiffs of the higher return they would have obtained had the judgment been promptly paid. The complaint alleged that in adopting this course of conduct, Gulf acted with "malicious" and "oppressive" intent.

On the basis of these allegations, plaintiff claimed that it was entitled to recover damages on four separate causes of action: (1) bad faith refusal to pay insurance benefits; (2) violation of Insurance Code section 790.03, subdivision (h)(5)'s requirement to attempt good faith settlement; (3) malicious prosecution of an appeal; and (4) abuse of process.[2] The trial court sustained Gulf's demurrer as to all causes of action without leave to amend and dismissed the action. ■ ■■■ Plaintiffs appeal from the judgment.[3]

## II.

Before examining each of the disparate causes of action which plaintiffs seek to invoke to support their present suit, it is important that we emphasize at the outset that the conduct in which Gulf allegedly engaged during the earlier proceedings—filing an appeal maliciously and in bad faith, solely for the purpose of delay—is clearly improper conduct which is subject to sanctions under California law. Section 907 of the Code of Civil Procedure, one of the general provisions included in the portion of the code dealing with "Appeals in Civil Actions," specifically provides: "When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just." (See also Cal. Rules of Court, rules 26(a), 135(a).)[4] ■ ■■■ Thus, if plain-

---

[2] Plaintiffs asserted a fifth cause of action for punitive damages, incorporating each of the four prior causes of action and then characterizing defendant's conduct as malicious and cruel. Of course, there is no separate or independent cause of action for punitive damages. The Court of Appeal treated this purported fifth cause of action as a prayer for damages. In light of our conclusion that plaintiffs have failed to establish any of the first four causes of action, it is unnecessary to address this claim for punitive damages.

[3] Because the appeal arises after the sustaining of a demurrer, for purposes of the appeal we must, of course, assume the truth of the facts alleged in the complaint and the reasonable inferences that may be drawn therefrom. (See, e.g., *Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741, 746 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701].)

[4] Both rules 26(a) and 135(a) provide in relevant part: "Where the appeal is frivolous or taken solely for the purpose of delay . . . the reviewing court may impose upon offending attorneys or parties such penalties . . . as the circumstances of the case and the discouragement of like conduct in the future may require."

tiffs had requested sanctions under section 907 in the initial appeal and had established the facts alleged in the present complaint, the appellate court could have awarded damages on this basis.[5]

We discussed the proper interpretation and application of section 907 at some length in *In re Marriage of Flaherty, supra,* 31 Cal.3d 637, 645-654. ■ In *Flaherty* we recognized the deleterious consequences—both to the opposing party and to the administration of justice—that result from the filing of frivolous appeals, and noted that appellate courts had in the past justifiably imposed sanctions pursuant to section 907 on a number of occasions. (See, e.g., *Estate of Wempe* (1921) 185 Cal. 557, 564 [197 P. 949]; *Seidell* v. *Tuxedo Land Co.* (1932) 216 Cal. 165, 171 [13 P.2d 686]; *Miller* v. *R.K.A. Management Corp.* (1979) 99 Cal.App.3d 460, 469-470 [160 Cal.Rptr. 164]; *In re Marriage of Schwander* (1978) 79 Cal.App.3d 1013, 1022 [145 Cal.Rptr. 325].) At the same time, however, we stressed the difficulty in distinguishing frivolous and nonfrivolous appeals and cautioned that any definition of "frivolousness" must be applied "so as to avoid a serious chilling effect on the assertion of litigants' rights on appeal. Counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win on appeal. An appeal that is simply without merit is *not* by definition frivolous and should not incur sanctions. Counsel should not be deterred from filing such appeals out of a fear of reprisals." (31 Cal.3d at p. 650.) "The difficulty," we emphasized, "is in striking a balance that will ensure both that indefensible conduct does not occur and that attorneys are not deterred from the vigorous assertion of clients' rights." (*Id.,* at p. 648.)

In *Flaherty* we established a general standard for determining "frivolousness"[6] and relied on the good judgment of appellate courts to

---

[5]While sanctions pursuant to section 907 are ordinarily imposed in conjunction with an opinion on affirmance, there is nothing in section 907 which precludes an aggrieved respondent on appeal from seeking such damages, or even dismissal of the appeal, at an earlier point in the process. (See generally 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 530, pp. 514-515 and cases cited.) Although the power summarily to dismiss a frivolous appeal is seldom exercised (*id.,* Appeal, § 531, pp. 515-516), past cases have on occasion awarded damages in connection with such dismissals. (See, e.g., *McFadden* v. *Dietz* (1897) 115 Cal. 697, 699 [47 P. 777]; *Toohey* v. *Toohey* (1950) 97 Cal.App.2d 84, 88-89 [217 P.2d 108].) Perhaps even more importantly, if an appellant is put on notice early in the process that the respondent is seeking damages under section 907, the potential award of such damages should reduce the appellant's leverage to coerce an unreasonable settlement and increase the appellant's incentive to abandon an appeal that is in fact frivolous. This may be particularly true since California Rules of Court, rules 26(a) and 135(a) (see fn. 4, *ante*), authorize the appellate court to impose penalties for the prosecution of a frivolous appeal *on offending attorneys* as well as on the appellant.

[6]"[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit." (31 Cal.3d at p. 650.)

strike the proper balance, emphasizing that in light of the competing interests "the punishment should be used most sparingly to deter only the most egregious conduct." (*Id.*, at p. 651.)[7]

*Flaherty* did not directly address the issue presented by this case: whether, after the settlement of an appeal, a plaintiff may bring an independent action to recover compensatory and punitive damages on the basis of the defendant's alleged bad faith prosecution of the earlier appeal. ▆ The reasoning of *Flaherty,* however, appears substantially at odds with the recognition of such a cause of action. Unlike section 907, which leaves the determination of frivolousness to an appellate court which is qualified to judge the degree of meritlessness of the arguments raised on appeal, plaintiffs' proposed causes of action would require that determination to be made by a lay jury. Although there are many contexts in which jury determinations may be superior to those of trial or appellate judges, the determination of the frivolousness of an appeal is not one. And the potential "chilling effect" on appeals—an effect that *Flaherty* struggled to minimize—would be greatly exacerbated if every appellant faced the prospect that a jury might impose additional damages—compensatory and punitive—in a subsequent action based on its assessment of his or her motive in prosecuting the appeal. Thus, although the issue presented here was not before us in *Flaherty,* the thrust of that decision certainly counsels that we approach plaintiffs' present claims with a healthy degree of skepticism.

## III.

Plaintiffs acknowledge that in no previous case has a litigant who has settled a case on appeal been permitted to maintain a separate action for damages based on the opposing party's allegedly bad faith conduct in prosecuting the appeal. Nonetheless, they maintain that such a cause of action should be recognized under any one of a number of theories. Because the closest authority on point involved an abuse of process action, we consider that theory first.

---

[7]Since *Flaherty,* appellate courts have imposed sanctions—at times quite sizeable—under section 907 in a number of instances. (See, e.g., *Maple Properties* v. *Harris* (1984) 158 Cal.App.3d 997, 1005-1012 [205 Cal.Rptr. 532] [$20,000 in sanctions assessed]; *Corona* v. *Lundigan* (1984) 158 Cal.App.3d 764, 767-769 [204 Cal.Rptr. 846] [$2,000]; *Menasco* v. *Snyder* (1984) 157 Cal.App.3d 729, 734-735 [203 Cal.Rptr. 748] [$1,000]; *Cosenza* v. *Kramer* (1984) 152 Cal.App.3d 1100 [200 Cal.Rptr. 18] [$3,000]; *Kapelus* v. *Newport Equity Funds, Inc.* (1983) 147 Cal.App.3d 1, 9 [194 Cal.Rptr. 893] [$5,000]; *Hersch* v. *Citizens Sav. & Loan Assn.* (1983) 146 Cal.App.3d 1002, 1011-1013 [194 Cal.Rptr. 628] [$125,000]; *Custom Crafts Carpets, Inc.* v. *Miller* (1982) 137 Cal.App.3d 120 [187 Cal.Rptr. 78] [$10,000]; *People* v. *Beverly Bail Bonds* (1982) 134 Cal.App.3d 906, 913-915 [185 Cal.Rptr. 36] [$2,000]. See generally Eisenberg, *Sanctions on Appeal: A Survey and a Proposal for Computation Guidelines* (1985) 20 U.S.F. L.Rev. 13.)

*A. Abuse of process.*

■ To establish a cause of action for abuse of process, a plaintiff must plead two essential elements: that the defendant (1) entertained an ulterior motive in using the process and (2) committed a wilful act in a wrongful manner. (See *Templeton Feed & Grain* v. *Ralston Purina Co.* (1968) 69 Cal.2d 461, 466 [72 Cal.Rptr. 344, 446 P.2d 152]; 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 709, p. 158.) ■ Gulf's alleged conduct clearly embraces the first element of ulterior motive; according to the complaint, Gulf knowingly filed a meritless appeal solely to gain the benefit of delay and to coerce plaintiffs into settling for less than the amount to which they were entitled. It is the second element, improper use of the process, that is the problem.

The facts before us bear a striking resemblance to those in *Tellefsen* v. *Key System Transit Lines* (1961) 198 Cal.App.2d 611, 613 [17 Cal.Rptr. 919], where the court found there could be no abuse of process because plaintiff had failed to allege a wilful act of improper use of process. Like plaintiffs in the instant case, plaintiffs in *Tellefsen* had recovered a judgment against defendant in a prior action where, allegedly, there was nothing that could reasonably be thought to constitute reversible error. Nonetheless, defendant "maliciously, frivolously, 'with intent to advantage themselves of plaintiff's need, and with intent to set an example for other litigants and with intent to pursue a common plan for the cheap compromise settlement of verdicts against them . . . and with other improper motives,'" appealed from the judgment. (*Ibid.*) Plaintiff contended that in so doing defendant abused the process of the appellate court. The *Tellefsen* court found that "[e]ven though the rule of abuse of process could be applied to the appellate process the complaint here fails to state a cause of action . . . . [Defendant] did nothing more than exercise its right to appeal, even though with alleged malicious intent." (*Id.*, at p. 613.)

The court accepted plaintiff's contention that the appeal was taken frivolously, but held: "merely taking a frivolous appeal is not enough to constitute an abuse of process." (*Id.*, at p. 615.) Despite plaintiff's contention that defendants had filed an appeal to "advantage themselves" and to pursue a plan for "cheap compromise settlement of verdicts" (*id.*, at pp. 612-613), the court held "[t]here is no allegation of any act of defendant using such appeal for other than its proper purpose. For taking that kind of appeal the party may be fined by the appellate court or damages may be awarded therefor to the respondent on appeal." (*Id.*, at p. 615.)

As in *Tellefsen,* plaintiffs in the present case allege nothing more than the taking of an appeal to which the city was entitled. They assert no facts to

support a finding that the use of process was done in an unauthorized manner, but only that Gulf's motive was improper.

The dissent suggests that *Tellefsen* is distinguishable from this case on the ground that "there was no allegation that the defendant [in *Tellefsen*] had actually threatened plaintiff or offered to settle." (*Post,* p. 804.) With all respect, we find the distinction untenable. The only "threat" which plaintiffs here can be said to have alleged is the threat that is implicit in every appeal—that it will be pursued to finality unless settlement is reached. And in view of the strong state interest in encouraging the settlement of litigation, it would clearly be improper to hold that *the making of an offer to settle* is itself sufficient to supply the missing element in an abuse of process action. Such a holding would inevitably have a devastating effect on the settlement process which many of our appellate courts have struggled hard to encourage, for no appellate counsel could properly advise his client to propose a settlement on appeal if that very proposal would itself provide the essential ingredient to subject the client to a second lawsuit for abuse of process.

Accordingly, we conclude that the abuse of process claim is without merit.

### B. Malicious prosecution of appeal.

■ Plaintiffs alternatively maintain that recovery is permissible under the tort of malicious prosecution. Although they acknowledge that no California decision has approved a cause of action for the malicious prosecution of an *appeal,* they suggest this court's decision in *Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43 [118 Cal.Rptr. 184, 529 P.2d 608, 53 A.L.R.3d 878] supports the creation of such a cause of action.

■ ■ ■ ■ ■ To prevail in an action for malicious prosecution, a plaintiff must prove—among other elements—that the "prior action . . . was commenced by or at the direction of the defendant." (*Id.*, at p. 50.)[8] In *Bertero,* we recognized that that element need not be interpreted so narrowly as to encompass only the *plaintiff* in the original action, but could also apply to a *defendant who maliciously filed a cross-complaint* in the prior proceeding. *Bertero* explained: "By seeking affirmative relief [through a cross-complaint] . . . defendants . . . did more than attempt to repel [plain-

---

[8]*Bertero* succinctly noted the elements necessary to establish a cause of action for malicious prosecution of a civil proceeding: "[A] plaintiff must plead and prove that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor [citations]; (2) was brought without probable cause [citations]; and (3) was initiated with malice [citations]." (*Ibid.*)

tiff's] attack; they took the offensive in attempting to prosecute a cause of action of their own." (13 Cal.3d at p. 53.)

█ Although plaintiffs suggest that the reasoning of *Bertero* supports a cause of action for the malicious filing of an appeal, we cannot agree. In *Bertero,* we emphasized that for many purposes cross-pleadings are treated as distinct and independent actions (13 Cal.3d at pp. 51-52; see also *Skaff* v. *Small Claims Court* (1968) 68 Cal.2d 76, 78-79 [65 Cal.Rptr. 65, 435 P.2d 825]; *Pacific Finance Corp.* v. *Superior Court* (1933) 219 Cal. 179, 182-183 [25 P.2d 983, 90 A.L.R. 384]; *McLellan* v. *McLellan* (1972) 23 Cal.App.3d 343, 353 [100 Cal.Rptr. 258]) and concluded that "no sound reason appears for treating a cause of action initiated by a cross-pleading as only an integral part of the cause initiated by the complaint." (13 Cal.3d at p. 51.) By contrast, filing an appeal "is not a separate proceeding and has no independent existence" (*Twyford* v. *Twyford* (1976) 63 Cal.App.3d 916, 922 [134 Cal.Rptr. 145] [rejecting malicious prosecution claim based on filing of request for admission]); it is merely the continuation of an action. (See generally, 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 1, p. 33.) █ Based on the reasoning of *Bertero,* a defendant's appeal cannot be considered a separate action "seeking affirmative relief," but rather is merely the continuation of an attempt "to repel" plaintiff's attack.[9]

*C. Breach of covenant of good faith and fair dealing.*

█ Plaintiffs also assert that their current suit is sustainable as an action for breach of the covenant of good faith and fair dealing which is implied by law in every contract, including insurance contracts. (See, e.g., *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 573 [108 Cal.Rptr. 480, 510 P.2d 1032]; *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425, 429 [58 Cal.Rptr. 13, 426 P.2d 173]; *Communale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 658 [328 P.2d 198, 68 A.L.R.2d 883].) Even if we were to assume, however, that Gulf's alleged conduct would constitute a breach of the covenant of good faith and fair dealing if it occurred in the

[9]*Bertero* noted that courts have long "refused to recognize a tort of malicious defense" (13 Cal.3d at p. 52). Two commentators have recently advocated that such a tort be recognized (see Van Patten & Willard, *The Limits of Advocacy: A Proposal for the Tort of Malicious Defense in Civil Litigation* (1984) 35 Hastings L.J. 891), but plaintiffs have not asserted that contention here. Moreover, even if such a tort were recognized, it would presumably include the requirement from malicious prosecution doctrine that the prior proceeding have terminated in favor of the present plaintiff. (*Id.,* at p. 927.) Plaintiffs in all probability could not meet that requirement here as regards the allegedly frivolous appeals since termination of an action by compromise or settlement has been held to be an insufficient basis for a malicious prosecution action. (See *Weaver* v. *Superior Court* (1979) 95 Cal.App.3d 166, 184-185 [156 Cal.Rptr. 745]; *Minasian* v. *Sapse* (1978) 80 Cal.App.3d 823, 827, fn. 4 [145 Cal.Rptr. 829], citing Prosser, Law of Torts (4th ed. 1971) § 119, p. 840; *Webb* v. *Youmans* (1967) 248 Cal.App.2d 851, 853 [57 Cal.Rptr. 11].)

context of litigation brought by an *insured* (cf. *White* v. *Western Title Ins. Co.* (1985) 40 Cal.3d 870 [221 Cal.Rptr. 509, 710 P.2d 309]), we held in *Murphy* v. *Allstate Ins. Co.* (1976) 17 Cal.3d 937, 943-944 [221 Cal.Rptr. 509, 710 P.2d 309] that an alleged breach of the covenant does not give rise to a cause of action by *third party claimants* such as plaintiffs herein. *Murphy* explains that because such a claimant "is not a contracting party[,] his right to performance is predicated on the contracting parties' intent to benefit him. [Citations.]" (*Id.,* at p. 944.) Furthermore, we observed that the third party beneficiary doctrine does not generally provide a basis for a third party claimant to recover in this context, because the implied duty to settle is ordinarily intended to benefit the insured and not the injured claimant. (*Ibid.*) Thus, we concluded in *Murphy* that an injured claimant may proceed directly against the insurer only to the extent that the insured party has assigned the claimant his cause of action for a breach of the duty to settle. (*Id.,* at p. 942; *Communale, supra,* 50 Cal.2d at pp. 661-662.)

Plaintiffs acknowledge this relatively recent precedent, but argue that our decision in *Royal Globe Ins. Co.* v. *Superior Court* (1979) 23 Cal.3d 880 [153 Cal.Rptr. 842, 592 P.2d 329] points toward a relaxation of the *Murphy* rule. It is true that in *Royal Globe* we held that a third party claimant may sue an insurer under the *statutory* good faith requirements of the Unfair Practices Act (Ins. Code, § 790.03, subd. (h)), but we did so on the basis of statutory language and legislative history evidencing a legislative intent to afford such a right. Nothing in our *Royal Globe* decision suggests expansion of the *common law* cause of action for breach of the covenant of good faith and fair dealing to embrace third party claimants; on the contrary, in that case we took note of the common law rule and distinguished *Murphy* as "being based primarily on contractual principles." (23 Cal.3d at p. 889.) Thus, plaintiffs' good-faith-and-fair-dealing theory cannot be sustained.

### D. *Violations of Insurance Code provision.*

Finally, plaintiffs contend that their present action can be sustained on the basis of the statutory provision we considered in *Royal Globe, supra,* 23 Cal.3d 880, asserting that Gulf's alleged conduct falls within the terms of Insurance Code section 790.03, subdivision (h)(5): "Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear."[10] We cannot agree that this provision was intended to apply to the facts alleged here.

---

[10]Section 790.03, subdivision (h) reads in full: "(h) knowingly committing or performing with such frequency as to indicate a general business practice any of the following unfair claims settlement practices: [¶] (1) Misrepresenting to claimants pertinent facts or insurance policy provisions relating to any coverages at issue. [¶] (2) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance

To begin with, subdivision (h)(5) speaks of "claims" and "claimants," and while those terms arguably could be stretched to include claims that have been reduced to judgment, other language in subdivision (h) suggests that is not what the Legislature had in mind. Subdivision (h)(10) describes as an unfair practice "[m]aking known to insureds or claimants a practice of the insurer of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration." Subsection (10) is the only part of subdivision (h) that mentions "appeals" or "awards." This suggests that subsection (5) was not intended to apply to judgments.

In addition, and perhaps more importantly, the standard provided in subdivision (h)(5)—sanctioning an insurer for not attempting to effectuate settlements of claims "in which liability has become reasonably clear"—affords no meaningful guidance once judgment is entered. In almost every case it could be argued that liability is "reasonably clear" once a trial judgment is entered in favor of a claimant, but—in light of the fundamental nature of the right to appeal and the general considerations discussed at length in *In re Marriage of Flaherty, supra,* —it appears quite unlikely that the Legislature intended to subject an insurer to the risk of a subsequent suit every time it exercised its right to appeal from an adverse judgment. Instead, we conclude that the more plausible interpretation of subdivision

policies. [¶] (3) Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies. [¶] (4) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been completed and submitted by the insured. [¶] (5) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear. [¶] (6) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when such insureds have made claims for amounts reasonably similar to the amounts ultimately recovered. [¶] (7) Attempting to settle a claim by an insured for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application. [¶] (8) Attempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of, the insured, his representative, agent, or broker. [¶] (9) Failing, after payment of a claim, to inform insureds or beneficiaries, upon request by them, of the coverage under which payment has been made. [¶] (10) Making known to insureds or claimants a practice of the insurer appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration. [¶] (11) Delaying the investigation or payment of claims by requiring an insured, claimant, or the physician of either, to submit a preliminary claim report, and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information. [¶] (12) Failing to settle claims promptly, where liability has become apparent, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage. [¶] (13) Failing to provide promptly a reasonable explanation of the basis relied on in the insurance policy, in relation to the facts or applicable law, for the denial of a claim or for the offer of a compromise settlement. [¶] (14) Directly advising a claimant not to obtain the services of an attorney. [¶] (15) Misleading a claimant as to the applicable statute of limitations."

(h)(5) is that the provision was intended to apply only to prejudgment conduct.

## IV.

The abuse of the litigation process for the purpose of delay is unquestionably a serious problem. Although, from a defendant's personal perspective, justice delayed may not be justice denied but a consummation devoutly to be wished, our legal system has long struggled—not always successfully—to eliminate such dilatory tactics. Recent legislation has expanded the judicial tools for dealing with the matter by explicitly authorizing the imposition of sanctions for frivolous and delaying conduct in the course of pretrial and trial proceedings (§ 128.5) and by increasing the judgment rate of interest to reduce a defendant's incentive to delay payment. (§ 685.010.) Additional remedial measures have been proposed—such as the inclusion of at least some portion of attorney fees as an item of costs routinely recoverable by the prevailing party on appeal (see Rep. of the Chief Justice's Special Com. on App. Practices and Procedures in the First App. Dist. (1981) p. 32)—which also appear deserving of thoughtful legislative consideration.

As we have seen, section 907 has long afforded a remedy for frivolous or delaying actions in the appeal process, and, in recent years, appellate courts, increasingly sensitized to the incentives for delay and the adverse consequences resulting from wholly meritless appeals, have begun to impose significant sanctions when they find that appeals have been pursued frivolously or for the improper purpose of delay. (See, *ante,* p. 791, fn. 7.) Nonetheless, as we have also explained, the imposition of sanctions in this context remains a delicate task, because an overbroad exaction of damages may significantly chill every litigant's enjoyment of the fundamental protections of the right to appeal. Given the complex and specialized nature of the task of distinguishing frivolous and nonfrivolous appeals, we conclude that—in the absence of an explicit legislative authorization of an independent cause of action for "malicious appeal"—an aggrieved party's remedy properly lies in the provisions of section 907.

The judgment is affirmed.

Mosk, J., Broussard, J., Reynoso, J., and Lucas, J., concurred.

**BIRD, C. J.**—I respectfully dissent. Here, the insurer of a negligent defendant knowingly filed a meritless appeal and used it for the purpose of coercing the plaintiffs to settle for less than their rightful judgment. The plaintiffs certainly do have a cause of action against the insurer.

## I.

The facts are clear since the present appeal arises from the sustaining of a demurrer. Consequently, the facts alleged in the plaintiffs' complaint are deemed to be true. (*Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741, 746 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701]; *Buckaloo* v. *Johnson* (1975) 14 Cal.3d 815, 828 [122 Cal.Rptr. 745, 537 P.2d 865].)

William Coleman drowned on August 3, 1975, while attempting to rescue his son from a swimming facility owned and operated by the City of Monrovia (hereafter the city). The death was caused by the city's negligence. At the time, the city was covered under a liability insurance policy issued by defendants Gulf Insurance Group and Gulf Insurance Company (hereafter collectively referred to as Gulf).

William Coleman's heirs, plaintiffs in the present action, brought a wrongful death suit against the city. In October of 1980, they obtained a jury verdict for $350,000. Following the denial of its new trial motion, the city appealed.

Throughout the proceedings, Gulf controlled the defense on behalf of the city. At the time of the appeal, Gulf lacked any reasonable basis for believing that the judgment would be reversed.

However, Gulf stood to gain by delaying payment as long as possible. Gulf was aware that plaintiffs were in dire financial straits, having lost their principal source of support when William Coleman died. By appealing, Gulf sought to postpone payment until plaintiffs were forced to settle for a fraction of the judgment.

Further, Gulf knew that the judgment accrued interest at the statutory rate of 7 percent per year, in contrast to the general market rate of over 15 percent. By investing the funds that would otherwise go to pay the judgment, Gulf could earn the higher rate, thus depriving plaintiffs of the return that they would have obtained had the judgment been promptly paid. For each year of delay, Gulf would gain—and plaintiffs would lose—over $28,000.

Sometime after filing the appeal, Gulf offered to pay plaintiffs an amount totalling less than half of the judgment awarded. Plaintiffs declined to settle. In January 1982, Gulf tried again, this time tendering to plaintiffs $300,000 in full satisfaction of the judgment. Under financial pressure, plaintiffs accepted.

Plaintiffs filed the present action in June of 1982, alleging that Gulf had wrongfully refused to pay the judgment, using the appeal as a tool for delay and coercion. They sought general and punitive damages, as well as compensation for economic losses.

## II.

Plaintiffs have asserted four causes of action: (1) breach of the covenant of good faith and fair dealing, (2) violation of the insurer's statutory duty to attempt good faith settlement (Ins. Code, § 790.03, subd. (h)(5)[1]), (3) malicious prosecution of an appeal, and (4) abuse of process. They argue that to deny them relief would be to carve out an anomalous loophole in the law. It is contended that strong legislative and common law policies oppose the use of delaying tactics to coerce vulnerable insurance claimants. (See, e.g., § 790.03, subd. (h)(5); *Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376, 404 [89 Cal.Rptr. 78, 47 A.L.R.3d 286].) It is unlawful to bring an appeal for the purpose of delay or harrassment. (See Code Civ. Proc., § 907; Cal. Rules of Court, rule 26(a); *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179].) Unless plaintiffs are accorded relief in the present situation, nothing will prevent insurers from filing frivolous appeals, gaining the benefits of delay, wearing down a financially pressed plaintiff, and then settling so as to avoid sanctions.[2]

---

[1]Unless otherwise noted, all statutory references are to the Insurance Code.

[2]Since Code of Civil Procedure section 907 and California Rules of Court, rule 26(a) are enforceable only by the reviewing court, they are ineffective where, as here, an insurer successfully coerces plaintiffs into accepting partial payment prior to a decision by that court.

The majority maintain that plaintiffs can avoid the delay inherent in the normal course of appeal by moving for dismissal. (See maj. opn., *ante,* at fn. 5.) Although the majority admit that the power to dismiss is rarely exercised, they fail to explain why. The reader may be left with the misleading impression that this court can solve the problem of meritless, coercive appeals with a friendly reminder to the appellate courts that they have the power to dismiss them with dispatch.

The problem is not so simple. As Witkin explains, "[r]ecognition of the power to dismiss or summarily affirm . . . tells us little of the practice. Except for a brief and unsuccessful experiment between 1932 and 1939 with summary affirmance or dismissal by rule (see 17 So. Cal. L. Rev. 259), the courts have dismissed few appeals as frivolous. The reason is that to determine the unsubstantial character of the appeal almost always requires an examination of the record, and this results in double labor for the court or unwarranted advancement of the case on the calendar. [Citations.]" (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 476, p. 4431.)

Because of the "double labor" involved, our overburdened appellate courts are about as likely to act on the majority's suggestion as they did in response to this court's last statement on the subject, "emphasiz[ing] that the appellate courts possess the . . . inherent power to summarily dismiss any action or appeal which has as its object to delay, vex or harass the opposing party or the court, or is based upon wholly sham or frivolous grounds." (*Ferguson* v. *Keays* (1971) 4 Cal.3d 649, 658 [94 Cal.Rptr. 398, 484 P.2d 70].) In the intervening 15

Gulf maintains that plaintiffs have failed to meet the requirements for any of their asserted causes of action. Further, Gulf suggests that the recognition of a cause of action in this situation would unconstitutionally chill insurers' right to petition the courts for a redress of grievances.

Plaintiffs' first cause of action is for breach of the covenant of good faith and fair dealing. Plaintiffs acknowledge that they cannot prevail under current law since they are not among the intended beneficiaries of the insurance contract. (See *Murphy* v. *Allstate Ins. Co.* (1976) 17 Cal.3d 937, 940-941 [132 Cal.Rptr. 424, 533 P.2d 584].) However, they urge this court to extend the duty to cover third party claimants.

The duty of good faith and fair dealing is implied in all contractual relationships. (*Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co.* (1984) 36 Cal.3d 752, 768 [206 Cal.Rptr. 354, 686 P.2d 1158].) Although, on occasion, implied contract terms have been extended to protect persons who were not among the intended beneficiaries of the contract (see generally, *Escola* v. *Coca Cola Bottling Co.* (1944) 24 Cal.2d 453, 461-468 [150 P.2d 436] (conc. opn. of Traynor, J.)), plaintiffs have not presented sufficiently compelling reasons to justify such an extension in the present case.[3]

Plaintiffs' reliance on *Royal Globe Ins. Co.* v. *Superior Court* (1979) 23 Cal.3d 880 [153 Cal.Rptr. 842, 592 P.2d 329] (hereafter *Royal Globe*) is misplaced. In *Royal Globe,* this court held that an insurance claimant who was not an intended beneficiary of the insurance contract could sue the insurer under the Unfair Practices Act (§ 790 et seq.). (*Royal Globe, supra,* 23 Cal.3d at p. 884.) The opinion was based entirely on that statute. It did not disturb the rule barring third party claimants from recovering for breach of the covenant. The court distinguished that rule as being "based primarily upon contractual principles." (*Id.,* at p. 889.)

Next, plaintiffs claim that they may recover under the Unfair Practices Act. Section 790.03, subdivision (h)(5) requires insurers to attempt to settle

---

years, that statement has not been cited in a single published opinion.

The majority also suggest that when an appellate court does dismiss an appeal as frivolous, it may award damages under Code of Civil Procedure section 907. (Maj. opn., *ante,* fn. 5; see Cal. Rules of Court, rule 26(a).) Yet, consideration of such an award will almost inevitably draw the court into a full review of the merits of the appeal, even if it somehow managed to avoid that task in the initial determination to dismiss. As this court held in *In re Marriage of Flaherty, supra,* due process requires that "[p]enalties for prosecuting frivolous appeals should not be imposed without giving fair warning, affording the attorney an opportunity to respond to the charge, . . . holding a hearing [and] provid[ing] the attorney with a written statement of the reasons for the penalty." (31 Cal.3d at p. 654.) Again, there is little incentive for the appellate court to depart from the normal course of waiting to decide the appeal on the merits.

[3]This conclusion is strengthened by the fact that plaintiffs may recover under an alternative theory. (See *post,* at pp. 802-807.)

claims "in which liability has become reasonably clear." This language is ambiguous as to the applicability of the subdivision to appeals.[4]

However, the standard of "reasonably clear" liability is nonsensical when applied to an appeal, since liability is—at least arguably—"reasonably clear" in virtually *all* cases that have yielded a judgment in favor of the plaintiff. Thus, subdivision (h)(5)'s standard would subject insurers to the risk of suit every time they exercised their right of appeal. It is unlikely that the Legislature intended such a result.

In their third cause of action, plaintiffs contend that Gulf committed the tort of malicious prosecution. To prevail in an action for malicious prosecution, a plaintiff must plead and prove, among other elements, that "the prior action . . . was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor [citations] []." (*Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 50 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878].) An appeal is merely the continuation of an action. (See generally, 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 1, p. 4019.)

Plaintiffs acknowledge that the California courts have not recognized a cause of action for the "malicious prosecution of an appeal," but suggest that such recognition flows logically from this court's decision in *Bertero* v. *National General Corp., supra,* 13 Cal.3d 43. *Bertero* held that the malicious filing of a cross-complaint could support an action for malicious prosecution. However, the reasoning of the opinion clearly excluded the possibility of a cause of action for the malicious filing of an appeal: "Defendants invoke a line of cases . . . in which various courts have refused to recognize a tort of malicious defense. [Citation.] We do not propose to establish such a tort by our holding here. . . . By seeking *affirmative* relief, however, defendants in the instant case did more than attempt to repel Bertero's attack; they *took the offensive* in attempting to prosecute a cause of action of their own." (*Id.,* at pp. 52-53, italics added.)[5]

---

[4]Subdivision (h)(5) applies only to "claims." Viewed solely as a matter of semantics, the term "claims" might or might not include claims that have been reduced to judgment. This ambiguity becomes apparent when subdivision (h)(5) is contrasted with subdivision (h)(10), which specifically prohibits "[m]aking known to insureds or claimants a practice of the insurer of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration."

[5]Plaintiffs criticize the distinction between the offensive and defensive use of process as artificial and meaningless. However, there is no need to alter the longstanding elements of the cause of action for malicious prosecution. Where a complaint alleges misuse of the judicial process but lacks one or more of the elements of malicious prosecution, it may properly be considered under the doctrine of tortious abuse of process. (See, e.g., *White Lighting Co.* v. *Wolfson* (1968) 68 Cal.2d 336, 350 [66 Cal.Rptr. 697, 438 P.2d 345].)

Finally, plaintiffs assert a cause of action for abuse of process. This court has described abuse of process as a "'catch-all'" tort that evolved "to cover improper uses of the judicial machinery that did not fit within the earlier established, but narrowly circumscribed, action of malicious prosecution." (*Barquis* v. *Merchants Collection Assn.* (1972) 7 Cal.3d 94, 104, fn. 4 [101 Cal.Rptr. 745, 496 P.2d 817]; see also *Twyford* v. *Twyford* (1976) 63 Cal.App.3d 916, 923 [134 Cal.Rptr. 145].)

"'Process,' as used in the tort 'abuse of process,' has never been limited to the strict sense of the term, but instead has been interpreted broadly to encompass the entire range of 'procedures' incident to litigation." (*Barquis* v. *Merchants Collection Assn., supra,* 7 Cal.3d at p. 104, fn. 4.) In particular, "the *taking of an appeal* [may] give rise to an abuse of process." (*Ibid.,* italics in original, citing *Tellefsen* v. *Key System Transit Lines* (1961) 198 Cal.App.2d 611 [17 Cal.Rptr. 919].)

To state a cause of action for abuse of process, a plaintiff must allege two elements: "'first, an ulterior purpose, and second, a wilful act in the use of the process not proper in the regular conduct of the proceeding. Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the process is required . . . . The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance [of] any formal use of the process itself, which constitutes the tort.'" (*Spellens* v. *Spellens* (1957) 49 Cal.2d 210, 232-233 [317 P.2d 613], italics omitted [hereafter *Spellens*]; accord *Clark Equipment Co.* v. *Wheat* (1979) 92 Cal.App.3d 503, 524 [154 Cal.Rptr. 874].)

It is not disputed that plaintiffs have alleged the first element, an ulterior purpose. The complaint avers that Gulf filed the appeal both to coerce plaintiffs into accepting less than the payment to which they were entitled and to gain the benefit of the funds that should have gone to pay the judgment.

The second element presents a more complex problem. It is well established that the wilful act requirement is not satisfied where the defendant has merely obtained process on nonmeritorious grounds. (See *Tellefsen* v. *Key System Transit Lines, supra,* 198 Cal.App.2d at p. 616; see also *Pimentel* v. *Houk* (1951) 101 Cal.App.2d 884, 886-887 [226 P.2d 739].) However, the courts have not clearly specified the nature of the additional allegation that is required.

A degree of definitional imprecision is inevitable with regard to a "catch-all" tort: "'It has been observed by the courts on several occasions that the elements necessary for an action for abuse of process are not clearly defined, either by the cases or by writers on the subject. The reason apparently is that the term has been used as a label for a variety of dissimilar situations which have in common only the fact that actionable injury was inflicted in connection with the use of judicial process and under such circumstances that the narrowly circumscribed action of malicious prosecution was inapplicable.'" (*Fairfield* v. *Hamilton* (1962) 206 Cal.App.2d 594, 603 [24 Cal.Rptr. 73], quoting 1 Cal.Jur.2d, Abuse of Process, § 5, pp. 213-214.)

In construing the requirement of a wilful act, the courts have endeavored to curb and remedy serious abuses of the judicial process while avoiding undue restraints on the ability of litigants to vigorously assert their interests. The requirement that plaintiffs prove something more than an improper motive and the absence of meritorious grounds ensures against an uncontrolled expansion of liability. (See generally, *Miller* v. *Stern* (1941) 262 App.Div. 5 [27 N.Y.S.2d 374, 375-376]; 72 C.J.S., Process, § 120, p. 1189.)

*Tranchina* v. *Arcinas* (1947) 78 Cal.App.2d 522 [178 P.2d 65] (hereafter *Tranchina*) is instructive. In *Tranchina,* the defendant landlords evicted the plaintiff tenant under wartime regulations that permitted evictions only where, inter alia, the landlord sought to recover possession for the purpose of occupying the property as his own residence. When the defendants failed to occupy the property immediately after the eviction, the plaintiff sued, claiming abuse of process. The court rejected the defendants' contention that since process was properly obtained, the plaintiff was barred from enforcing the statutory policy against unauthorized evictions. The court reasoned that the wilful use of the process for a purpose not authorized by law constituted a "perversion" of that process. (*Id.,* at p. 526; see also *Pimentel* v. *Houk, supra,* 101 Cal.App.2d at pp. 888-889.)

In the present case, plaintiffs have alleged that Gulf filed an appeal and subsequently used it for purposes that are prohibited by law and disfavored as a matter of public policy. Code of Civil Procedure section 907 and California Rules of Court, rule 26(a), prohibit the taking of an appeal for purposes of delay or harassment. Gulf escaped the operation of these provisions only because it successfully forced the plaintiffs to abandon their full judgment before the merits of the appeal were determined. (See *ante,* fn. 2.)

Furthermore, Gulf has violated the strong public policy favoring the prompt settlement of insurance claims. As explained above, Gulf's conduct slips into a crack between the statutory and common law prohibitions against the use of dilatory settlement tactics to exploit the vulnerable position of

insurance claimants. Plaintiffs cannot recover under the common law cause of action for breach of the covenant of good faith and fair dealing since they are third party claimants, not intended beneficiaries of the insurance policy. (See *Murphy* v. *Allstate Ins. Co., supra,* 17 Cal.3d at pp. 940-941.) Although the Unfair Practices Act does protect third party claimants (see *Royal Globe, supra,* 23 Cal.3d 880), it was not designed to remedy abuses of the appellate process. (See *ante,* at pp. 800-801.)

Yet, the need for special protection clearly extends to the present situation. In upholding jury awards of punitive damages for bad faith refusal to settle, the courts have recognized that insurance claimants need special protection against dilatory insurer tactics: "The very risks insured against presuppose that if and when a claim is made, the insured will be disabled and in strait financial circumstances and, therefore, particularly vulnerable to oppressive tactics on the part of an economically powerful entity." (*Fletcher* v. *Western National Life Ins. Co., supra,* 10 Cal.App.3d at p. 404; see also *Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 820-821 [169 Cal.Rptr. 691, 620 P.2d 141]; *Neal* v. *Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 923 [148 Cal.Rptr. 389, 582 P.2d 980].)[6] Third party claimants are no less vulnerable than policyholder claimants.

Nor is the need for protection limited to the prejudgment period. Indeed, claimants may be even more helpless against coercive tactics after judgment, when they have already undergone pretrial and trial proceedings without any compensation to ameliorate the effect of their injuries.

In short, as in *Tranchina, supra,* 78 Cal.App.2d 522, Gulf has used the process for purposes directly contrary to law and public policy. In these circumstances, it is appropriate for the tort of abuse of process to fulfill its "catchall" function.[7]

---

[6]The necessity for special protection is also reflected in an exception to the general rule against the award of attorney fees in civil actions—the allowance of compensation to insurance claimants for attorney fees incurred in obtaining benefits withheld by insurers in bad faith. (See *Brandt* v. *Superior Ct.* (1985) 37 Cal.3d 813 [210 Cal.Rptr. 211, 693 P.2d 796]; *Mustachio* v. *Ohio Farmers Ins. Co.* (1975) 44 Cal.App.3d 358 [118 Cal.Rptr. 581].)

[7]Gulf relies heavily on *Tellefsen* v. *Key System Transit Lines, supra,* 198 Cal.App.2d 611. In *Tellefsen,* the plaintiff alleged that the defendant had refused to pay a personal injury judgment and instead had filed a groundless appeal for coercive purposes. There was no allegation that the defendant had actually threatened the plaintiff or offered to settle. On the contrary, the defendant had merely pursued its appeal to a resolution, paying the judgment in full after the appellate court issued its ruling. (*Id.,* at p. 612, fn. 2.)

The court accepted the notion that "the rule of abuse of process could be applied to the appellate process." (*Tellefsen, supra,* 198 Cal.App.2d at p. 613.) Nevertheless, the court held that the plaintiff had failed to state a cause of action, reasoning that the defendant had " 'done nothing more than carry out the process . . . to its authorized conclusion, even

Gulf contends that unless insurers are permitted to employ meritless appeals as coercive tools in this situation, their right to pursue valid appeals will be chilled by the threat of lawsuits. It is argued that this chilling effect would violate both public policy and the state and federal Constitutions.

This court has recently had occasion to discuss the chilling effect of damages and penalties imposed for the taking of groundless appeals. The opinion in *In re Marriage of Flaherty, supra,* 31 Cal.3d 637 (hereafter *Flaherty*) addressed the application of Code of Civil Procedure section 907. That section empowers reviewing courts to assess damages against parties who bring frivolous appeals. California Rules of Court, rule 26(a), was also discussed. It authorizes reviewing courts to impose sanctions on attorneys or parties for frivolous appeals.

This court noted that the imposition of damages or sanctions for bringing an appeal poses delicate problems. "The difficulty is in striking a balance that will ensure both that indefensible conduct does not occur and that attorneys are not deterred from the vigorous assertion of clients' rights." (*Flaherty, supra,* 31 Cal.3d at p. 648.) It was observed that, on one side of the balance, frivolous appeals burden the appellate courts with unproductive work and impede the functioning of the appellate process. (See *id.,* at pp. 645-646, 648.) On the other side, the imposition of damage liability and sanctions might have a chilling effect on the legitimate use of the appellate process. (*Id.,* at p. 647.)

The court concluded that "an appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—*or* when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit." (*Flaherty, supra,* 31 Cal.3d at p. 650, italics added.) In applying this standard, the lower courts were urged to proceed with extreme caution. "[A]ny definition must be read so as to avoid a serious chilling effect on the assertion of litigants' rights on appeal. . . . [T]he punishment should be used most sparingly to deter only the most egregious conduct." (*Id.,* at pp. 650-651.)

though with bad intentions.'" (*Id.,* at p. 615, quoting Prosser on Torts, *supra,* at p. 669.)

Gulf's reliance on *Tellefsen* is misplaced in two respects. First, the present complaint, unlike the complaint in *Tellefsen,* alleges that Gulf not only filed an appeal for an improper purpose, but also attempted to effectuate that purpose by inducing the plaintiffs to accept partial payment under the threat of continued delays in payment. (Cf. *Spellens, supra,* 49 Cal.2d at pp. 230-233.) Although an offer to settle could not by itself transform a frivolous appeal into an abuse of process, it is significant that the plaintiff in *Tellefsen* failed to allege *any* act by the defendant other than the pursuit of the appeal itself.

Second, the present case—again unlike *Tellefsen*—implicates the strong judicial and legislative policies against the use of delaying tactics to exploit the vulnerable position of insurance claimants.

The requirements for establishing tortious abuse of process are more demanding than the *Flaherty* test. Not only must the plaintiff show that the defendant pursued its appeal for an improper purpose—the equivalent of the first alternative prong of the *Flaherty* test—but also that the defendant committed a wilful and improper act in the use of the process. (See *Spellens, supra,* 49 Cal.2d at pp. 232-233.)

Gulf argues that the cause of action for abuse of process nevertheless poses a greater danger of chilling legitimate appeals since it, unlike the *Flaherty* sanctions, would be determined by a jury. In Gulf's view, trial by jury is the real concern. However, the danger of chilling valid appeals is not a serious one and the policies favoring a remedy are most compelling.

The statute and rule discussed in *Flaherty* were directed primarily at reducing the burden of frivolous appeals on the appellate courts. (See *Flaherty, supra,* 31 Cal.3d at pp. 645-646, 648.) The present cause of action not only advances that important policy, but it furthers the public policy against bad faith settlement practices in the insurance field. (See *ante,* at pp. 799-800.)

In *Flaherty,* this court was principally concerned with the danger that personal sanctions imposed on individual attorneys would inject "'undesirable self-protective reservations into the attorney's counseling role.'" (*Flaherty, supra,* 31 Cal.3d at p. 647.) The present cause of action does not impinge upon the representative role of attorneys.[8] It affects insurers, a group not easily chilled from pursuing its interests through litigation.[9] In-

---

[8]Gulf attempts to draw an analogy between the attorney-client relationship and the duty of defense owed by an insurer to its policyholder. It is argued that even if insurers can be relied upon to pursue their own interests, they may be discouraged from advancing their policyholders' interests. In many reported cases, however, the insurer insisted on pursuing a vigorous defense even though the interest of the insured lay in a prompt settlement within the policy limits. (See, e.g., *Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654 [328 P.2d 198, 68 A.L.R.2d 883]; *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425 [58 Cal.Rptr. 13, 426 P.2d 173].) In such cases, the present cause of action will increase the insurers' incentive to represent the interests of their policyholders. Some degree of conflicting interests is inherent in the relationship of insurer and insured. Gulf has failed to show that the problems would be worse with the present cause of action than without it.

[9]The defense of insurance claims is an integral aspect of the insurance business. Insurers possess both the means and the incentive to litigate valid appeals. (Cf. *Va. Pharmacy Bd.* v. *Va. Consumer Council* (1976) 425 U.S. 748, 771-772, fn. 24 [48 L.Ed.2d 346, 364, 96 S.Ct. 1817] [commercial speech is not easily chilled since it is the "*sine qua non* of commercial profits"]; *Central Hudson Gas & Elec.* v. *Public Serv. Comm'n* (1980) 447 U.S. 557, 564, fn. 6 [65 L.Ed.2d 341, 349, 100 S.Ct. 2343] [same].) As expert "repeat players" in the litigation process, insurers are well equipped to assess the risk of liability and to spread costs over a large number of appeals. (See generally, Galanter, *Why the "Haves" Come Out Ahead: Speculations on the Limits of Legal Change* (1974) 9 Law & Soc'y Rev. 95, 98-103.)

surance claimants need not be stripped of all protection in order to avoid discouraging valid appeals by insurers.

Gulf has raised only speculative fears of a chilling impact on the right of appeal. In *Royal Globe, supra*, 23 Cal.3d 880, it was argued that a third party cause of action against insurers for failure to settle would spawn widespread and damaging litigation. (See *id.*, at p. 898 (dis. opn. of Richardson, J.).) Gulf has not provided this court with any information indicating either that this threat has actually materialized or that it has discouraged insurers from vigorously asserting their rights or those of their policyholders.[10]

Gulf nevertheless maintains that the recognition of a cause of action in the present situation would violate insurers' constitutional right of access to the judicial process. The right to petition the courts for redress of grievances is protected under the due process and free speech provisions of the United States and California Constitutions. (U.S. Const., 1st and 14th Amends.; Cal. Const., art. I, §§ 3, 7, subd. (a).) The constitutional right of effective access to the courts is applicable not only in actions against a government entity, but also where the opposing litigants are private parties. (See *Mine Workers* v. *Illinois Bar Assn.* (1967) 389 U.S. 217, 222-223 [19 L.Ed.2d 426, 430-431, 88 S.Ct. 353]; *California Transport* v. *Trucking Unlimited* (1972) 404 U.S. 508, 510-511 [30 L.Ed.2d 642, 646-647, 92 S.Ct. 609]; see also *Payne* v. *Superior Court* (1976) 17 Cal.3d 908, 914 [132 Cal.Rptr. 405, 553 P.2d 565].)

However, in the judicial context, the right to petition is tempered by the necessity for restrictions designed to ensure a fair process. (See *California Transport* v. *Trucking Unlimited, supra*, 404 U.S. at pp. 512-513 [30 L.Ed.2d at pp. 647-648].) According to the complaint, Gulf did not actually seek a redress of grievances. It pursued its appeal not to obtain a favorable decision on the merits, but to coerce plaintiffs into abandoning their rightful judgment. Gulf thereby interfered with *plaintiffs'* right of effective access to the courts. Moreover, Gulf has failed to establish that the recognition of a cause of action in the present situation would have an undesirable chilling effect on insurers' rights of appeal. Hence, Gulf's claim of a constitutional violation is without merit. (Cf. *id.*, at pp. 511-512 [30 L.Ed.2d at pp. 646-647].)

---

[10]Gulf points to a few large judgments assessed against insurers under *Royal Globe.* However, the mere existence of large judgments does not, by itself, establish an undesirable chilling effect. As noted above, insurers are well equipped to recognize and pursue valid appeals. (See *ante,* fn. 9.) Further, the award of large judgments cuts both ways. From the claimants' point of view, it underscores the magnitude of insurer abuses and, hence, the need for a remedy.

One question remains to be resolved. Plaintiffs seek punitive damages. Civil Code section 3294, subdivision (a) provides that the plaintiff in an action for the breach of a noncontractual obligation may recover punitive damages "where the defendant has been guilty of oppression, fraud, or malice." The present action is based on a noncontractual theory: tortious abuse of process. Hence, plaintiffs are entitled to seek punitive damages provided they have properly pleaded malice, fraud, or oppression. (Cf. *Davis* v. *Local Union No. 11, Internat. etc. of Elec. Workers* (1971) 16 Cal.App.3d 686, 697-698 [94 Cal.Rptr. 562] [approving award of punitive damages in action for malicious prosecution]; *Metzenbaum* v. *Metzenbaum* (1953) 121 Cal.App.2d 64, 69 [262 P.2d 596] [same].)

"Malice" means "conduct which is intended by the defendant to cause injury to the plaintiff or conduct which is carried on by the defendant with a conscious disregard of the rights or safety of others." (Civ. Code, § 3294, subd. (c)(1).) "Oppression" is defined as "subjecting a person to cruel and unjust hardship in conscious disregard of that person's rights." (Civ. Code, § 3294, subd. (c)(2).)

Plaintiffs have alleged that Gulf deliberately embarked on a concerted course of conduct designed to exploit their financial misfortunes, to coerce them into abandoning the judgment, which Gulf knew to be valid, and to reap the interest from the award during the period of delay. Accordingly, plaintiffs have alleged that Gulf was guilty of malice and oppression as defined in Civil Code section 3294, subdivision (c). They should be permitted to seek punitive damages.

### III.

In conclusion, plaintiffs have failed to meet the requirements for any of their first three asserted causes of action: breach of the covenant of good faith and fair dealing, violation of the statutory duty to settle, and malicious prosecution. However, plaintiffs should be permitted to maintain an action for abuse of process. Their complaint alleges that Gulf: (1) filed an appeal for purposes of coercion and delay, and (2) subsequently used the appeal to force plaintiffs into accepting a payment less than the judgment, in violation of the strong public policy against the use of dilatory settlement practices to exploit the vulnerable position of insurance claimants. These allegations make out the two elements of abuse of process: an ulterior purpose and a wilful and improper act in the use of the process. (See *Spellens, supra,* 49 Cal.2d at p. 232.)[11]

---

[11]I am at a loss to understand the majority's reluctance to encourage the several benefits that recognition of such a tort would imply. The policy favoring settlement and the policy

Further, plaintiffs have alleged that Gulf was guilty of malice and oppression as defined in Civil Code section 3294, subdivision (c). Hence, they should be permitted to seek punitive damages.

Since I would reverse the judgment of dismissal as to the cause of action alleging abuse of process and the prayer for punitive damages, I do not join my colleagues' opinion.

---

opposing frivolous appeals serve the same ultimate purposes. Both policies serve to reduce the workload of the appellate courts and to provide prompt relief to plaintiffs possessing valid claims. Recognizing a cause of action for abuse of process would advance those purposes by discouraging the filing of meritless appeals by insurance companies in the first instance.

It would do so by substantially increasing the risks of attempts to gain unfair settlement leverage. The deterrent effect would be particularly strong in egregious cases such as this one, where the insurer was motivated to exploit a financial crisis brought upon the plaintiffs by the very conduct of its insured that supported the underlying judgment.

An insurer considering a frivolous appeal would be left with a clear choice: pay the judgment, or appeal and wait for a decision on the merits. An unfair, coercive settlement offer would no longer be an attractive way to avoid payment of the full judgment or to escape judicial scrutiny of the appeal to determine whether it is frivolous. Denied the cheap settlement option, the insurer would be forced to face squarely the possibility that the appellate court will deprive it of the other principal advantage of a dilatory appeal—the market/judgment interest differential—by awarding *Flaherty* damages. As a result, fewer frivolous appeals would be filed and justice would be more fully and promptly served.