[No. B072040 Second Dist., Div. Two. Apr. 11, 1994.]

DANELLE HAND, Plaintiff and Appellant, v.
FARMERS INSURANCE EXCHANGE et al., Defendants and Appellants;
ROBERT MANN et al., Objectors and Appellants.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976 and 976.1, this opinion is certified for publication with the exception of parts II-IV of the Discussion.

## COUNSEL

Robert Mann and Donald W. Cook for Plaintiff and Appellant, and in pro. per. for Objectors and Appellants.

Waldman & Chuang, Craig H. Bell, Aviv L. Tuchman and Thomas V. Perea for Defendants and Appellants.

## OPINION

**FUKUTO, J.**—These are cross-appeals from the judgment in an action against an insurer to recover on a prior automobile liability judgment, under Insurance Code section 11580, subdivision (b)(2), and for damages in tort.[1] The defendant insurers appeal from the judgment on the policy solely on grounds it awarded excessive interest. Plaintiff appeals from the judgment

---

[1] Insurance Code section 11580, subdivision (b)(2), hereafter section 11580, requires that all California automobile liability insurance policies, among other policies, provide, and be

insofar as it determined as without legal merit her causes of action for bad faith and intentional infliction of emotional distress. Plaintiff also asserts error in certain intermediate discovery and sanctions rulings; as to the latter, she is joined as appellant by her attorneys.

The principal, novel issue presented is whether a cause of action in tort for breach of the implied covenant of good faith and fair dealing may lie in favor of a judgment creditor who has become a third party beneficiary of the insurance policy by operation of section 11580, on account of the insurer's bad faith refusal to pay the judgment. In light of *Murphy* v. *Allstate Ins. Co.* (1976) 17 Cal.3d 937 [132 Cal.Rptr. 424, 553 P.2d 584] (*Murphy*), we have concluded that such a cause of action may be stated in the limited circumstances presented by this case, involving a "third party claimant" who is also a judgment creditor of the insured, presently entitled to recover her judgment from the insurer "on the policy" (§ 11580). We therefore reverse the judgment insofar as it precluded as a matter of law plaintiff's assertion of this claim. In all other respects, we affirm.

FACTS

On December 3, 1983, plaintiff, Danelle Hand, was injured when the car in which she was riding was rear ended by one driven by Angela Dubel. Dubel's vehicle was insured by Farmers Insurance Exchange and Truck Insurance Exchange (collectively Farmers), under a policy issued to First Interstate Bank, as trustee for numerous trusts, including the Henry Mudd Trust (the trust). Dubel's vehicle was an asset of the trust, and she was listed as the car's driver on an insurance broker's certificate prepared to identify insured vehicles. The policy provided $500,000 coverage per accident.

According to plaintiff's second amended complaint, beginning in early 1984 various claims personnel of Farmers informed plaintiff's counsel that Dubel was covered under the policy, up to $500,000. In 1984 plaintiff sued Dubel, along with Mudd, the declarant of the trust, in superior court. Farmers allegedly provided for Dubel's defense. In answers to interrogatories countersigned by counsel furnished by Farmers, Dubel stated she was covered by the policy, for $500,000.

During the years before trial in 1990, Dubel's several counsel allegedly reiterated these representations, and made settlement offers to plaintiff ranging from $20,000 to $190,000. At a pretrial settlement conference, a Farmers

---

construed to provide, "that whenever judgment is secured against the insured or the executor or administrator of a deceased insured in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment."

claims adjuster offered $100,000. All of these offers were made on Farmers' behalf.

Plaintiff's case was tried in mid-1990. The jury awarded her $234,681, against both Dubel and Mudd.[2] The court added to the verdict prejudgment interest under Civil Code section 3291, together with costs.

After the judgment had become final, Farmers refused plaintiff's demand to pay it. Five months after the verdict, Farmers informed plaintiff for the first time that it believed it was obligated on behalf of Dubel only for $15,000, on the theory that she had been only a "permissive user" of the trust vehicle, and as such was entitled to only $15,000 coverage, under Insurance Code section 11580.1.

Plaintiff commenced this action against Farmers in June 1991. She sought first to recover, under section 11580, the amounts owing on the judgment against Dubel and Mudd. In addition, as relevant here, plaintiff asserted two purported tort causes of action. As restated in the second amended complaint, plaintiff's claim for "Bad Faith Deprivation of a Protected Property Interest" alleged that Farmers' denial that its policy covered and obligated it to pay plaintiff's judgment against Dubel in excess of $15,000 was made with knowledge or reckless disregard of its untruth, with knowledge of plaintiff's financial needs, and for the purposes of avoiding Farmers' obligation to plaintiff, depriving her of her property interest in the insurance policy (created by section 11850), and injuring her emotionally, physically, and financially.

Plaintiff further alleged a claim for intentional infliction of emotional distress (IIED), which incorporated the preceding allegations and further alleged Farmers knew that its conduct would interfere with plaintiff's physical and financial rehabilitation and would cause her emotional distress. On both causes of action, plaintiff prayed for general, special, and punitive damages.

The trial court granted plaintiff's motion for summary adjudication of her first cause of action, to recover the entire judgment from Farmers. Contrary to Farmers' assertions, the court held not only that Farmers' coverage of a permissive user was not limited by the policy or Insurance Code section 11580.1, but also that Dubel had been fully covered as a named insured under the policy.

Farmers then moved for summary adjudication that plaintiff's remaining causes of action were without merit. The trial court granted this motion also.

---

[2]Mudd's joint and several liability, however, was fixed at only $15,000, by virtue of Vehicle Code section 17151, subdivision (a).

Although it had previously overruled a demurrer to the bad faith cause of action (in a prior amended complaint), the court now reversed itself, and ruled that a duty of good faith and fair dealing could not be "grafted onto th[e] relationship" created by section 11580 between a judgment creditor and the insurer. The court further held that the failure to pay or to settle could not form the basis for an IIED claim.

The court thereafter entered judgment awarding plaintiff $398,128.89 on account of her judgment against Dubel and Mudd. This sum included various items of interest. Farmers thereafter paid $346,936.22 of the judgment, reserving certain elements of interest it contested, and appealed from the judgment with respect to them. Plaintiff appealed from the judgment insofar as it disallowed her tort causes of action, and with reference to certain discovery orders. Plaintiff's counsel joined in the appeal as to discovery sanctions assessed against them as well as plaintiff. Farmers has not appealed from the determination that it is fully liable to plaintiff on the policy for the prior judgment.

## DISCUSSION

### I. *The Bad Faith Claim.*

Our review of plaintiff's purported cause of action for bad faith is framed by two preliminary matters.

First, Farmers's motion for summary adjudication essentially was made and decided on the basis that the facts alleged in plaintiff's unverified second amended complaint did not add up to cognizable causes of action. In other words, in this instance the summary adjudication motion "in effect operated as a motion for judgment on the pleadings, a motion which fulfills the office of a general demurrer to test the complaint's sufficiency to state a cause of action." (*C. L. Smith Co.* v. *Roger Ducharme, Inc.* (1977) 65 Cal.App.3d 735, 750 [135 Cal.Rptr. 483].) In these circumstances, the same legal issue is before us, to be decided by assuming as true the allegations of the complaint. ██ The general rule that a plaintiff may not rely on his or her pleadings to resist a summary judgment motion (see Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 1993) ¶ 10:199, p. 10-55) does not apply where the motion is based on the legal insufficiency of the plaintiff's claims as alleged.[3] Indeed, because Farmers's motion was not based on a prima facie evidentiary showing of insufficiency, plaintiff had no

---

[3]Although Farmers did file certain declarations and discovery responses with its motion, they would not have warranted summary adjudication under Code of Civil Procedure section 437c, former subdivision (f).

burden to offer responsive evidence. (See Cal. Practice Guide, *supra*, at ¶ 10:261, pp. 10-72 to 10-73.)

Second, although plaintiff's bad faith cause of action was titled as one for "Bad Faith Deprivation of a Protected Property Interest," it is more appropriately appraised as a claim for tortious breach of a duty imposed by the contractual implied covenant of good faith and fair dealing, which is what the common term "bad faith" signifies. (See 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 656, pp. 745-746 [discussing, inter alia, *Fletcher v. Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376 [89 Cal.Rptr. 78, 47 A.L.R.3d 286] [*Fletcher*], from which plaintiff appears to have drawn her label].) Plaintiff has defended her cause of action here by reference to the cases that have expounded this right of action. Our task is to determine whether the facts she has alleged square with the principles and rationales of those decisions.

■ The covenant of good faith and fair dealing, implied by law in every contract including insurance policies, "imposes upon each contracting party the duty to refrain from doing anything which would render performance of the contract impossible by any act of his own, [and] also the duty to do everything that the contract presupposes that he will do to accomplish its purpose." (*Harm v. Frasher* (1960) 181 Cal.App.2d 405, 417 [5 Cal.Rptr. 367].) "The precise nature and extent of the duty imposed by such an implied promise will depend on the contractual purposes." (*Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 818 [169 Cal.Rptr. 691, 620 P.2d 141] [*Egan*].)

■ In the context of the contractual relationship between a liability insurer and its insured, the implied covenant has been held to require the insurer to accept a reasonable settlement offer when it is likely that the judgment will exceed policy limits. (E.g., *Johansen v. California State Auto. Assn. Inter-Ins. Bureau* (1975) 15 Cal.3d 9, 16 [123 Cal.Rptr. 288, 538 P.2d 744].) In the context of a casualty or disability policy, including the uninsured motorist coverage of an automobile policy, the covenant has been held to require that the insurer not unreasonably and in bad faith withhold payment of the insured's claim or benefits. (E.g., *Egan*, *supra*, 24 Cal.3d 809, 817-819 [disability]; *Gruenberg v. Aetna Ins. Co.* (1973) 9 Cal.3d 566, 573-575 [108 Cal.Rptr. 480, 510 P.2d 1032] [casualty]; *Cancino v. Farmers Ins. Group* (1978) 80 Cal.App.3d 335, 340 [145 Cal.Rptr. 503] [uninsured motorist]; *Fletcher*, *supra*, 10 Cal.App.3d at pp. 401-402 [disability].) In both contexts, breach of the covenant's respective duties by the insurer has been held actionable in tort—permitting recovery of consequential damages (such as emotional distress) and punitive damages—because of the absolute

and relative status of insurers, which perform a sensitive, quasi-public service, undertaking to safeguard their insureds against calamities, and which also enjoy a superior bargaining position. (E.g., *Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654, 684-685 [254 Cal.Rptr. 211, 765 P.2d 373] [*Foley*]; *Egan, supra,* 24 Cal.3d at pp. 819-820.)

■ Generally—by definition—the implied covenant runs in favor of the other contracting party, and hence it is generally perceived as axiomatic that a "third party claimant" may not bring an action for breach of the covenant or its duties. (See, e.g., *Coleman* v. *Gulf Ins. Group Co.* (1986) 41 Cal.3d 782, 794-795 [226 Cal.Rptr. 90, 718 P.2d 77, 62 A.L.R.4th 1083] [*Coleman*].) Thus, an ordinary accident claimant is categorically disqualified, regardless of the insurer's conduct, from invoking or suing upon the insurer's good faith duty to settle the claim within policy limits. (See *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 304-305 [250 Cal.Rptr. 116, 758 P.2d 58] [overruling prior construction of Insurance Code section 790.03 as authorizing similar actions, and stating that surviving theories include "(as to the insured) . . . breach of the implied covenant"].)

Yet exceptions have arisen, with respect to third party beneficiaries of insurance contracts in whose favor the implied covenant and its duties have been held to run. Thus, in *Northwestern Mut. Ins. Co.* v. *Farmers' Ins. Group* (1978) 76 Cal.App.3d 1031 [143 Cal.Rptr. 415] (*Northwestern Mutual*), a permissive user of a truck, not a party to the policy, was held to have possessed a bad faith claim against the owner's insurer for failure to settle, because he had been an insured under the terms of the policy, and therefore was an express third party beneficiary, entitled to enforce the contract (Civ. Code, § 1559), including the implied covenant insofar as it ran for his benefit. Because he stood in the same relationship with the insurer under the policy as the named insured, and would be benefited by performance of the duty to settle, he was entitled to sue for its breach. (*Northwestern Mutual, supra,* at pp. 1041-1044.)[4]

In *Northwestern Mutual, supra,* the third party beneficiary held the status of an insured under the policy. In the present case, plaintiff cannot claim that status: rather, she encountered Farmers, in the first instance, as a third party claimant for damages from *Farmers's* nonparty insured, Dubel. The significance of this distinction was explored by the Supreme Court in the case that is most relevant to our decision, *Murphy, supra,* 17 Cal.3d 937.

---

[4]Similarly, in *Cancino* v. *Farmers Ins. Group, supra,* 80 Cal.App.3d 335, a nonparty insured under an auto policy's uninsured motorist coverage was allowed to bring a bad faith claim against the insurer for failure to attempt to settle his injury claim. Once again, the plaintiff's status as a nonparty to the contract did not avert his enjoyment, as an insured, of a duty arising from the covenant of good faith.

Like this case, *Murphy* involved a judgment creditor claimant, empowered to sue the insurer by section 11580. She sought to invoke the good faith duty to settle, and its remedy of insurer liability for the entire judgment notwithstanding policy limits. (See *Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 661 [328 P.2d 198, 68 A.L.R.2d 883].) The high court, in a unanimous opinion by Justice Clark, determined the resulting issues as follows.

First, the court reaffirmed the good faith duty to settle, and that its breach qualified an insured for tort relief. On the other hand, the duty to settle had been implied to protect the insured, and it did not directly benefit the injured claimant. Although the insured could have assigned the cause of action for breach of the covenant to the claimant, that had not happened here. (*Murphy*, *supra*, 17 Cal.3d at pp. 940-942.)

Second, the court considered the plaintiff's status by virtue of section 11580. Citing a substantial line of cases, the court straightforwardly declared that the section "makes the judgment creditor a third party beneficiary of the insurance contract between the insurer and the insured." (*Murphy*, *supra*, 17 Cal.3d at p. 943.) This meant that the adjudicated claimant could enforce those contractual promises made directly for him or her. And in this connection, the court added, "the implied covenant of good faith and fair dealing has become a contract 'term' within the meaning of section 11580 . . . ." (*Ibid.*; see fn. 1, *ante*.)[5]

However, the court concluded the *Murphy* plaintiff could not maintain her cause of action for breach of the implied covenant, because, once again, the duty to settle that she sought to enforce was not one imposed for her benefit. "A third party [beneficiary] should not be permitted to enforce covenants made not for his benefit, but rather for others"; to allow it would confer an unintended "bonus" beyond the contractual benefits intended. (*Murphy*, *supra*, 17 Cal.3d at p. 944.) "Allstate having paid plaintiff the policy limits, she has already received all benefit contemplated by the policy." (*Ibid.*)

Although *Murphy* has since been cited for the general proposition that "third party claimants" may not raise claims of breach of the covenant of good faith (e.g., *Coleman*, *supra*, 41 Cal.3d at p. 795), the decision plainly

---

[5]The court also observed that "[t]he injured claimant's rights under the statute may extend beyond third party beneficiary principles." (17 Cal.3d at p. 943) In this connection, the court noted *Barrera* v. *State Farm Mut. Automobile Ins. Co.* (1969) 71 Cal.2d 659 [79 Cal.Rptr. 106, 456 P.2d 674] (*Barrera*), which had held that public policy imposed a duty, running in favor of a statutory claimant, promptly to investigate the insured's insurability. *Barrera* held that if the insurer breached this duty, the claimant would not be bound by misrepresentations by the insured, even though they could provide the insurer a defense as against the insured.

has both a narrower import and a broader one, with respect to the present case. First, *Murphy* reiterates and establishes that, by virtue of section 11580, a judgment creditor of an insured enjoys third party beneficiary status and rights under the policy, and in this respect stands distinct from those "third party claimants" who have not achieved that status.[6] Second, *Murphy* validates the principle stated in such cases as *Northwestern Mutual, supra,* 76 Cal.App.3d 1031, that a third party beneficiary, in particular one so situated by virtue of section 11580, may enforce implied contractual covenants, including the covenant of good faith, to the extent that those covenants or their duties run in its favor.[7] Conversely, *Murphy* disallows such a beneficiary from claiming the benefits of a duty under the implied covenant that was not implied or posited to protect its interests under the contract.

 The critical question thus left pregnant but unresolved by *Murphy, supra,* 17 Cal.3d 937, is whether an unreasonable, bad faith refusal to pay a judgment creditor claimant the entire amount of the judgment, after it becomes final, implicates some recognizable duty of good faith by the insurer under its policy, which was intended to benefit such a third party beneficiary. We believe so.

Although the policy in this case does not appear in the record, it may safely be inferred that it included "the usual promise to pay 'on behalf of the insured . . . all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage. . . .' " (*Zahn v. Canadian Indem. Co.* (1976) 57 Cal.App.3d 509, 511 [129 Cal.Rptr. 286].) There can be no doubt that, pursuant to this express policy undertaking, the implied covenant of good faith and fair dealing imposes a duty not to withhold in bad faith payment of damages which the insured has become obligated by judgment to pay. Certainly with respect to the insured, "The duty to so act is immanent in the contract whether the company is attending to the claims of third persons against the insured or the claims of the insured

---

[6]This distinction in turn distinguishes *Coleman, supra,* 41 Cal.3d 782, which Farmers views as dispositive. Although the plaintiffs in *Coleman* had obtained a judgment, it was not final when the insurer committed the alleged bad faith; indeed, the conduct at issue was the insurer's pursuit of an appeal from the judgment, on behalf of the insured. Lacking a final judgment, the *Coleman* plaintiffs did not enjoy the status of judgment creditor beneficiaries under section 11580. (*McKee* v. *National Union Fire Ins. Co.* (1993) 15 Cal.App.4th 282 [19 Cal.Rptr.2d 286].)

[7]Farmers urges that *Murphy*'s statement that the implied covenant "has become a contract 'term' within the meaning of section 11580" (*Murphy, supra,* 17 Cal.3d at p. 943) is dictum, because the court ultimately held that the feature of the covenant the plaintiff sought to invoke was unavailable to her, as it was not intended for her benefit. That does not make the observation dictum; to the contrary, it was necessary to that very holding. Moreover, as previously noted, there exists independent authority that a third party beneficiary may, where appropriate, invoke the implied covenant.

itself. Accordingly, when the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort." (*Gruenberg* v. *Aetna Ins. Co., supra,* 9 Cal.3d at p. 575.)

Moreover, unlike the duty to settle that was at issue in *Murphy, supra,* 17 Cal.3d 937, the duty not to withhold in bad faith payment of adjudicated claims runs not only in favor of the insured but also in favor of a judgment creditor such as plaintiff here. Section 11580 operates as part of a larger body of California law that seeks to assure that accident victims will be securely compensated through automobile policies. (See *Barrera, supra,* 71 Cal.2d at p. 672.) "The public policy expressed in the Financial Responsibility and related laws requires that we construe statutes applicable to automobile liability insurance policies, as well as contractual provisions in those policies, in light of its purpose to protect those who may be injured by the use of automobiles." (*Ibid.*) Accordingly, the insurer's policy duty to pay adjudicated liabilities is in place as much to protect adjudicated injured parties from uncompensated loss as to protect the insured from personal financial disaster.

To this end, once having secured a final judgment for damages, the plaintiff becomes a third party beneficiary of the policy, entitled to recover on the judgment on the policy. At that point the insurer's duty to pay runs contractually to the plaintiff as well as the insured. And the plaintiff having also become a beneficiary of the covenant of good faith (*Murphy, supra,* 17 Cal.3d at pp. 943-944), the duty to exercise good faith in not withholding adjudicated damages necessarily is owing to the plaintiff also.

Farmers argues that this conclusion ignores and conflicts with section 11580, in that the statute by its terms provides the judgment creditor only a right of action against the insurer, not a right to payment without suit. In support, Farmers cites *Billington* v. *Interinsurance Exchange* (1969) 71 Cal.2d 728 [79 Cal.Rptr. 326, 456 P.2d 982], in which the Supreme Court noted that "under our existing direct action statute [section 11580] an injured party is compelled to bring two lawsuits if he seeks to collect a judgment from the insurer which issued a liability policy." (*Id.* at pp. 744-745.)

The quoted, descriptive statement was made in response to an argument that allowing insurers to assert the defense of the insured's noncooperation would unfairly require a creditor to bring two suits. Farmers's broader argument that the rights of the class enabled by section 11580 extend no further than its bare terms is fallacious, for several reasons.

 First, section 11580 cannot be read to create merely a judicial remedy, without an underlying right; and it is clear from the history of the

statute that its purpose and effect were to create a right in the insurance contract. (See *Malmgren* v. *Southwestern A. Ins. Co.* (1927) 201 Cal. 29, 33 [255 P. 512] [*Malmgren*].) Indeed, as a matter of public policy, duties beyond those specifically set forth in section 11580 have been imposed on insurers for the benefit of statutory creditors. (*Barrera, supra,* 71 Cal.2d at pp. 668-678.)

Second, judgment creditors granted a right of action by the statute have been repeatedly and definitively held to be third party beneficiaries of the policy. (*Murphy, supra,* 17 Cal.3d at p. 943.) And, as explained in *Murphy,* these beneficiaries are entitled to performance, without suit, of implied covenants and duties imposed to secure their benefits, just as they are not entitled to invoke duties unnecessary, or in addition, to their receiving "all intended benefit." (*Id.* at p. 944.)

■ Finally, contrary to Farmers's insinuation, a right of action for breach of the implied covenant of good faith need not be sought or found in the statute, because the actionable duty has always been implied by law from and into the contract itself. Although particular legislation might possibly supersede or "repeal" the implied covenant, it is nowise the necessary source of it. Presently, section 11580 has been authoritatively construed as recognizing, not excluding, the covenant of good faith as part of the parties' relationship. (*Murphy, supra,* 17 Cal.3d at p. 943; see fn. 7, *ante.*)

Farmers also contends that a right of action for refusing in bad faith to pay a third party beneficiary's finally adjudicated claim, before the second suit authorized by section 11580, would conflict with existing law, which both allows an insurer to assert defenses in the latter action, including that of coverage (see 6 Witkin, *supra,* Torts §§ 1152-1158, pp. 584-593), and disallows a right of action for "malicious defense." (See *Coleman, supra,* 41 Cal.3d at p. 794, fn. 9.)

These concerns too are exaggerated. The cause of action that plaintiff here sought to assert was based on Farmers's extrajudicial refusal to pay the judgment, before this action was filed. If that refusal was in bad faith, it was unprivileged and actionable. (See *Fletcher, supra,* 10 Cal.App.3d at pp. 395-396.) And even assuming a finding of bad faith would entitle plaintiff to recover her expenses incurred in this action, that would be an allowance for having had to pursue what was wrongfully withheld before suit. Thus, to the extent that a bad faith claim may provide recompense for legal proceedings, it is provided as an element of damages suffered by reason of primary,

extrajudicial conduct. (*Brandt* v. *Superior Court* (1985) 37 Cal.3d 813, 819 [210 Cal.Rptr. 211, 693 P.2d 796]; cf. *White* v. *Western Title Ins. Co.* (1985) 40 Cal.3d 870, 890-891 [221 Cal.Rptr. 509, 710 P.2d 309] (conc. opn. of Grodin, J.).)

Farmers finally contends that if plaintiff is entitled to a right of action under the implied covenant, it should be construed as only contractual, not tortious, because plaintiff did not enjoy the special relationship with Farmers that is necessary to give rise to a good faith duty actionable in tort. Once more, we respectfully disagree.

As Farmers notes, the "special relationship" indispensable to a bad faith action in tort has only been perceived between insurers and insureds. (See, e.g., *Foley, supra,* 47 Cal.3d at pp. 683-685, 692.) However, if this is a peculiar relationship, its elements also appear in the relationship between an insurer and its contractual and statutory third party beneficiary obligee. The obligor is the same " ' "purveyo[r] of a vital service labeled quasi-public in nature." ' " (*Id.* at p. 685.) The plaintiff looks to the insurer for recompense from external calamity. (See *id.* at p. 684.) Moreover, as this complaint acutely indicates, "the insurer's and [plaintiff's] interest are financially at odds." (*Id.* at p. 693.)

Additionally, plaintiff's special contractual status (see *Malmgren, supra,* 201 Cal. at p. 33), vis-à-vis other "third party claimants," has been created and provided for by legislation, section 11580. Plaintiff's enjoyment of the duties of good faith and fair dealing is thus itself a product of legislative, public policy. (Cf. *Barrera, supra,* 71 Cal.2d at pp. 675-677.) And of course, the traditional distinction between duties actionable in contract or in tort is whether they "are created to enforce the intentions of the parties . . . [or] to vindicate 'social policy.' " (*Foley, supra,* 47 Cal.3d at p. 683.) Therefore, just as is the case with other, insureds' bad faith causes of action against insurers, the present cause of action for bad faith nonpayment of a finally adjudicated claim may sound in tort as well as contract.

We have reached the conclusion that plaintiff's bad faith cause of action does state a cause of action with due regard, indeed concern, for the widespread general understanding that bad faith claims against insurers are not assertable by "third party claimants." (See, e.g., *Moradi-Shalal* v. *Fireman's Fund Ins. Companies, supra,* 46 Cal.3d at p. 305; *Coleman, supra,* 41 Cal.3d at p. 795.) The leading authority for that proposition appears to be *Murphy, supra,* 17 Cal.3d 937. (See, e.g., *Coleman, supra,* at p. 795.) Yet, as

explained, the law laid down by *Murphy* actually and inexorably drives the conclusion that, with respect to the specific good faith duty to pay adjudicated claims, a judgment creditor like plaintiff, under section 11580, enjoys the contractual status, rights, and posture that vest such a cause of action. Accordingly, summary adjudication of plaintiff's bad faith cause of action should not have been granted.

## II.-IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is reversed with respect to the cause of action for bad faith. In all other respects, the judgment is affirmed. Defendants shall bear costs.

Boren, J., and Gates, J., concurred.

The petition of defendants and appellants for review by the Supreme Court was denied July 21, 1994. Kennard, J., Arabian, J., and Baxter, J., were of the opinion that the petition should be granted.

---

*See footnote, *ante*, page 1847.