[No. D019111. Fourth Dist., Div. One. Sept. 14, 1995.]

GARY HUGHES, Plaintiff and Appellant, v.
MID-CENTURY INSURANCE COMPANY, Defendant and Appellant.

COUNSEL

Richard P. Verlasky for Plaintiff and Appellant.

Chapin, Fleming & Winet, Edward D. Chapin, Gregory S. Tavill and Shirley Banner Gauvin for Defendant and Appellant.

OPINION

**KREMER, P. J.**—Defendant Mid-Century Insurance Company appeals a portion of the judgment favoring plaintiff Gary Hughes on his third party complaint against Mid-Century for benefits under its liability insurance policy issued to Hughes's judgment debtor. Mid-Century contends the superior court erred in concluding the policy's language involving supplementary cost payments was ambiguous and thus entitled Hughes to recover costs he incurred in his suit against Mid-Century's insured. We strike that portion of the judgment.

Hughes appeals the portion of the judgment sustaining without leave to amend Mid-Century's demurrer to his claim for breach of the implied covenant of good faith and fair dealing. Hughes contends the superior court should have concluded he adequately pleaded a bad faith cause of action based upon Mid-Century's asserted wrongful withholding of insurance benefits from Hughes after Hughes obtained a judgment against Mid-Century's insured. We affirm that portion of the judgment.

I

INTRODUCTION

While insured by Mid-Century, Phillips was involved in a motor vehicle accident with Hughes. Hughes obtained a judgment against Phillips exceeding Mid-Century's policy limits. The judgment also awarded Hughes costs

against Phillips. On Phillips's behalf, Mid-Century paid Hughes the policy limits. However, when Mid-Century did not pay Hughes the court-awarded costs or interest on the amount of the judgment within policy limits, Hughes sued Mid-Century for those items and further alleged Mid-Century breached the policy's implied covenant of good faith and fair dealing.

Finding policy language involving supplementary payments to be ambiguous, the superior court determined Hughes was entitled to recover from Mid-Century as policy benefits the costs Hughes incurred in suing Phillips and interest on the amount of the judgment against Phillips within policy limits. The superior court also sustained Mid-Century's demurrer to Hughes's alleged cause of action for breach of the implied covenant of good faith and fair dealing. On this record we do not disturb the portion of the judgment sustaining Mid-Century's demurrer. Further, we conclude the court erred in ordering Mid-Century to reimburse Hughes for costs he incurred in suing Phillips.

## II

### FACTS

In January 1990 Mid-Century issued an automobile liability insurance policy to Phillips.[1] The policy was subject to a $25,000 bodily injury liability limit per person. The policy's supplementary payments clause provided in part: "In addition to our limit of liability, we will pay these benefits as respects an insured person: [¶] 1. All costs we incur in the settlement of any claim or defense of any suit. [¶] 2. Interest after entry of judgment on any amount that does not exceed our limit of liability. . . ."

In March 1990 Hughes was injured when his motorcycle collided with Phillips's automobile.

In April 1990 Hughes's counsel acknowledged any claim arising out of the accident would exhaust the limits of Phillips's policy with Mid-Century. Hughes did not accept Mid-Century's offer to pay the $25,000 policy limits before August 28, 1990.

---

[1]The policy provided in part:

"We will pay damages for which any insured person is legally liable because of bodily injury to any person and/or property damage arising out of the ownership, maintenance or use of a private passenger car, a utility car, or a utility trailer.

"We will defend any claim or suit asking for these damages. We may settle when we consider it appropriate.

"We will not defend any suit or make additional payments after we have paid the limit of liability for the coverage."

In July 1990 Hughes sued Phillips for damages. (Hughes v. Phillips (Super. Ct. San Diego County, 1990, No. 626420).) Mid-Century provided Phillips with a defense.

In February 1992 Phillips's counsel offered to settle the case for the $25,000 policy limits. Hughes did not accept the settlement offer.

On March 3, 1992, the jury returned a $516,788.50 special verdict favoring Hughes against Phillips.

On March 13, 1992, the court entered judgment on special verdict favoring Hughes against Phillips for $516,788.50 plus costs.

On March 16, 1992, Hughes served Phillips with notice of entry of judgment.

On March 23, 1992, Hughes filed a memorandum of costs.

On May 11, 1992, on Phillips's behalf Mid-Century sent $25,000 to Hughes. Mid-Century did not pay Hughes his court-awarded costs incurred in suing Phillips or any interest on his judgment against Phillips.

## III

### SUPERIOR COURT PROCEEDINGS

On May 12, 1992, Hughes sued Mid-Century for failure to pay insurance benefits (Ins. Code,[2] § 11580, subd. (b)(2)),[3] breach of the implied covenant of good faith and fair dealing, intentional infliction of emotional distress, and statutory violations.[4] Hughes alleged Mid-Century refused and continued to refuse to pay for damages suffered by Hughes. Hughes also alleged Mid-Century breached the duty of good faith and fair dealing it assertedly

---

[2]All statutory references are to the Insurance Code unless otherwise specified.

[3]Section 11580, subdivision (b)(2), requires that all California automobile liability insurance policies contain and be construed to contain a "provision that whenever judgment is secured against the insured . . . in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment." (*Ibid.; Hand* v. *Farmers Ins. Exchange* (1994) 23 Cal.App.4th 1847, 1850, fn. 1 [29 Cal.Rptr.2d 258].)

[4]Ultimately, Hughes abandoned his cause of action based on statutory violations. Further, Hughes's cause of action for intentional infliction of emotional distress was summarily adjudicated favoring Mid-Century. Those causes of action are not at issue in these appeals.

owed Hughes after the judgment against Phillips by unreasonably refusing to pay Hughes benefits due and owing under the policy.[5]

In August 1992 the court sustained without leave to amend Mid-Century's demurrer to Hughes's alleged cause of action for breach of the implied covenant of good faith and fair dealing.

In February 1993 Mid-Century filed a motion for summary judgment or summary adjudication on Hughes's cause of action for failure to pay insurance benefits.

In March 1993 Mid-Century's motion for summary judgment came for hearing. The parties stipulated the superior court could decide the entire case based on the evidence presented on Mid-Century's summary judgment motion. Concluding the policy's language about supplementary cost payments was ambiguous, the court stated it could not determine from such language whether Mid-Century was obligated to pay Hughes's costs in his lawsuit against Phillips. Hence, construing that language against Mid-Century and favoring Hughes, the court ordered Mid-Century to pay Hughes $5,063.70 costs under section 11580, subdivision (b)(2). The court also ordered Mid-Century to pay Hughes $580 interest on the $25,000 policy limits for the "time between March 3, 1992 (the date of verdict) and May 11, 1992 (the date of payment) pursuant to the stipulation of the parties."

In May 1993 the court entered $5,643.70 judgment favoring Hughes against Mid-Century.

Both sides appeal.

## IV

### DISCUSSION

### A

#### Mid-Century's Appeal

Mid-Century contends the superior court erred in concluding the policy's language involving supplementary cost payments was ambiguous.

---

[5]Although Hughes's complaint against Mid-Century did not specify the nature of the policy benefits allegedly wrongfully withheld from Hughes, subsequent proceedings indicated the items Hughes sought to recover from Mid-Century were the court-awarded costs Hughes incurred in suing Phillips and interest on the amount of the judgment against Phillips within policy limits.

As noted, that language provided in relevant part: "In addition to our limit of liability, we will pay these benefits as respects an insured person: [¶] 1. All costs we incur in the settlement of any claim or defense of any suit. . . ." ■ "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. [Citation.] If contractual language is clear and explicit, it governs. [Citation.]" (*Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254, 1264 [10 Cal.Rptr.2d 538, 833 P.2d 545].) ■ Upon independently reviewing the record de novo, we conclude the policy language involving supplementary cost payments was unambiguous and did not obligate Mid-Century to pay Hughes the costs beyond policy limits incurred by Hughes in suing Phillips. (*Milazo* v. *Gulf Ins. Co.* (1990) 224 Cal.App.3d 1528, 1534 [274 Cal.Rptr. 632]; *Stratton* v. *First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071, 1083-1084 [258 Cal.Rptr. 721].)[6]

Hughes contends the superior court properly interpreted the policy as providing that costs awarded Hughes in his lawsuit against Phillips constituted a supplementary benefit to be paid above the limit of liability. We disagree. The definitions section of the policy provided that throughout the policy the word "we" meant "the Company named in the Declarations which provides this insurance." Hence, in the supplementary payments clause the word "we" referred to Mid-Century. Thus, in effect, the language at issue unambiguously stated that Mid-Century would pay all costs *Mid-Century* incurred in defending or attempting to settle any suit against its insured Phillips. However, in no sense did Mid-Century incur Hughes's costs. Only Hughes incurred such costs.[7] Although Phillips was ultimately ordered to pay Hughes the $5,063.70 costs incurred by Hughes in suing Phillips, such costs did not constitute "costs incurred" by Mid-Century but instead essentially represented part of the total award against Phillips based on Phillips's liability for Hughes's injuries.

In sum, we find nothing in the policy language suggesting Mid-Century was required to pay court-awarded costs incurred by the party suing Phillips when such costs went beyond the liability coverage limit. Since Mid-Century had already paid Hughes the $25,000 policy limits on Phillips's behalf, Mid-Century was not contractually obligated to pay more of Phillips's adjudicated debt to Hughes. Hence, we conclude the superior court erred in

---

[6]As noted, the policy's supplementary payments clause also provided Mid-Century would pay interest after entry of judgment on any amount not exceeding its liability limit. Mid-Century does not challenge the portion of the court's ruling ordering payment of $580 interest to Hughes.

[7]" 'The word "incurred," when used in connection with bills or expenses, means to become liable for and to have liability thrust upon one by act or operation of law. [Citations.]' [Citation.]" (*Hertzka & Knowles* v. *Salter* (1970) 6 Cal.App.3d 325, 332 [86 Cal.Rptr. 23].)

ordering Mid-Century to pay Hughes as additional insurance benefits the costs incurred by Hughes in suing Phillips.

## B

### Hughes's Appeal

Hughes sought to state a cause of action for breach of the implied covenant of good faith and fair dealing by pleading: Hughes obtained a judgment against Mid-Century's insured Phillips; by virtue of the judgment, Hughes as judgment creditor became a third party beneficiary of the insurance policy issued by Mid-Century to Phillips; from the date of the judgment Mid-Century owed Hughes an implied covenant of good faith and fair dealing not to deny unreasonably the benefits due and owing to Hughes under the policy; and Mid-Century breached such covenant by unreasonably refusing to pay benefits due and owing to Hughes. The superior court sustained without leave to amend Mid-Century's demurrer to such asserted cause of action.

Hughes contends the court erred in sustaining Mid-Century's demurrer to his claim for breach of the implied covenant of good faith and fair dealing. Citing *Murphy* v. *Allstate Ins. Co.* (1976) 17 Cal.3d 937 [132 Cal.Rptr. 424, 553 P.2d 584] (*Murphy*), Hughes contends upon becoming Phillips's judgment creditor he also became a third party beneficiary entitled to policy benefits.[8] Thus, Hughes asserts once he obtained the judgment against Mid-Century's insured Phillips, Mid-Century was obligated under the implied covenant of good faith and fair dealing to make prompt payment of those benefits to Hughes but Mid-Century intentionally and unreasonably withheld such benefits. Hence, Hughes concludes he may properly seek damages for Mid-Century's bad faith acts occurring *after* he became a "statutory insured" and "third party beneficiary" entitled to policy benefits. Citing *Murphy* and *Coleman* v. *Gulf Ins. Group* (1986) 41 Cal.3d 782 [226 Cal.Rptr. 90, 718 P.2d 77, 62 A.L.R.4th 1083], Mid-Century contends Hughes could not recover for bad faith because Hughes was not a party to the insurance contract, was not an insured, and was not entitled to enforce covenants contained in the contract solely for the benefit of the insured.

---

[8]In *Murphy, supra,* 17 Cal.3d 937, the Supreme Court observed that section 11580, subdivision (b)(2), "makes the judgment creditor a third party beneficiary of the insurance contract between the insurer and the insured. [Citations.] [¶] A third party beneficiary may enforce a contract expressly made for his benefit. (Civ. Code, § 1559.) And although the contract may not have been made to benefit him alone, he may enforce those promises directly made for him. [Citations.]" (*Murphy, supra,* at p. 943.) The court also stated: "The injured claimant's rights under the statute may extend beyond third party beneficiary principles." (*Ibid.*)

Since this record reveals Hughes's alleged cause of action for breach of the implied covenant of good faith and fair dealing to be defective, we decline to disturb the court's ruling sustaining Mid-Century's demurrer to that claim.

We are aware that contentions similar to Mid-Century's were rejected in *Hand* v. *Farmers Ins. Exchange, supra,* 23 Cal.App.4th 1847 (*Hand*). In *Hand* the appellate court ultimately concluded ". . . the law laid down by *Murphy* actually and inexorably drives the conclusion that, with respect to the specific good faith duty to pay adjudicated claims, a judgment creditor like plaintiff, under section 11580, enjoys the contractual status, rights and posture that vest such a cause of action [for bad faith]." (*Id.* at p. 1861.)[9] Although the analysis in *Hand* might be viewed as improperly extending the law of tortious bad faith particularly by finding a "special relationship" exists between an insurer and its insured's judgment creditor (*id.* at p. 1860), we need not determine whether *Hand* accurately states the law. Even if we were to deem such cause of action for bad faith to exist, on this record Hughes would be precluded from asserting such claim.

Hughes's alleged cause of action for breach of the implied covenant of good faith and fair dealing was based upon Mid-Century's wrongful withholding of the asserted policy benefits of court-awarded costs incurred by Hughes in suing Phillips and interest on the amount of the judgment against Phillips within policy limits. As discussed, the controverted policy language involving supplementary cost payments was unambiguous and did not obligate Mid-Century to pay Hughes the costs beyond policy limits incurred by Hughes in suing Phillips. Hence, as a matter of law Mid-Century did not wrongfully withhold payment of such costs. We also regard as de minimis Hughes's claim for interest on the amount of the judgment against Phillips within the policy limits. Further, as we shall explain, in any event Hughes's alleged bad faith cause of action against Mid-Century was insufficient to meet the elements set forth in *Hand, supra,* 23 Cal.App.4th 1847.

As noted, in *Hand, supra,* 23 Cal.App.4th 1847, the appellate court concluded an insurer may be liable for "an unreasonable, bad faith refusal to

---

[9]In *Hand, supra,* 23 Cal.App.4th 1847, the appellate court considered the issue "whether a cause of action in tort for breach of the implied covenant of good faith and fair dealing may lie in favor of a judgment creditor who has become a third party beneficiary of the insurance policy by operation of section 11580, on account of the insurer's bad faith refusal to pay the judgment." (*Id.* at p. 1851.) The court observed *Murphy, supra,* 17 Cal.3d 937, left unresolved the question "whether an unreasonable, bad faith refusal to pay a judgment creditor claimant the entire amount of the judgment, after it becomes final, implicates some recognizable duty of good faith by the insurer under its policy, which was intended to benefit such a third party beneficiary." (*Hand, supra,* at p. 1857.) In answering that question affirmatively, the appellate court in *Hand* stated: "In light of [*Murphy*], we have concluded that such a cause of action may be stated in the limited circumstances presented by this case, involving a 'third party claimant' who is also a judgment creditor of the insured, presently entitled to recover her judgment from the insurer 'on the policy' (§ 11580)." (*Hand, supra,* at p. 1851.)

pay a judgment creditor claimant the entire amount of the judgment, *after it becomes final . . . .*" (*Id.* at p. 1857, italics added.) The court also stated that ". . . once having secured a *final* judgment for damages, the plaintiff becomes a third party beneficiary of the policy, entitled to recover on the judgment on the policy. *At that point* the insurer's duty to pay runs contractually to the plaintiff as well as the insured." (*Id.* at p. 1858, italics added.) Further, in *Hand* the appellate court observed that *Murphy, supra,* 17 Cal.3d 937, "reiterates and establishes that, by virtue of section 11580, a judgment creditor of an insured enjoys third party beneficiary status and rights under the policy, and in this respect stands distinct from those 'third party claimants' who have not achieved that status." (*Hand, supra,* at p. 1857, fn. omitted.) The appellate court in *Hand* noted such distinction distinguished *Coleman* v. *Gulf Ins. Group, supra,* 41 Cal.3d 782: "Although the plaintiffs in *Coleman* had obtained a judgment, it was not final when the insurer committed the alleged bad faith; indeed, the conduct at issue was the insurer's pursuit of an appeal from the judgment, on behalf of the insured. Lacking a final judgment, the *Coleman* plaintiffs did not enjoy the status of judgment creditor beneficiaries under section 11580. [Citation.]" (*Hand, supra,* at p. 1857, fn. 6.)

The time line here is fatal to Hughes. On March 13, 1992, judgment on special verdict favoring Hughes against Phillips was entered. On March 16, 1992, Hughes served Phillips with notice of entry of judgment. On May 11, 1992, Mid-Century on Phillips's behalf paid Hughes the policy limits. On May 12, 1992, Hughes filed this lawsuit against Mid-Century. However, on that date Phillips's time to appeal the underlying judgment had not expired. (Cal. Rules of Court, rule 2.) Since Hughes's judgment against Phillips was subject to being appealed, it was not "final" for purposes of any potential bad faith cause of action against Mid-Century. (*Hand, supra,* 23 Cal.App.4th at pp. 1857-1858.)

In sum, this record demonstrates as a matter of law Hughes sued Mid-Century before Mid-Century had any duty to pay Hughes as policy benefits the court-awarded costs incurred by Hughes in suing Phillips or interest on the amount of the judgment against Phillips within policy limits. (*Hand, supra,* 23 Cal.App.4th at p. 1858.) In essence, Hughes brought this suit before achieving the status of a judgment creditor enjoying third party beneficiary status and rights under the policy. (*Coleman* v. *Gulf Ins. Group, supra,* 41 Cal.3d 782; *Hand, supra,* at pp. 1857-1858.) Thus, Hughes's alleged cause of action for breach of the implied covenant of good faith and fair dealing against Mid-Century must fail.

## Disposition

The portion of the judgment awarding Hughes costs as insurance benefits is reversed. The remainder of the judgment is affirmed. Mid-Century shall have costs on appeal.

Benke, J., and Nares, J., concurred.