Filed 2/19/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THOMAS GUASTELLO, | |
| Plaintiff and Appellant, | G057714 |
| v. | (Super. Ct. No. 30-2017-00899314) |
| AIG SPECIALTY INSURANCE COMPANY, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from an order of the Superior Court of Orange County, John C. Gastelum, Judge.  Reversed.

Newmeyer & Dillion, Gregory L. Dillion, Richard W. Protzmann and Jacquelyn M. Mohr for Plaintiff and Appellant.

Nicolaides Fink Thorpe Michaelides Sullivan, Mark J. Sobczak, Kimberly A. Hartman and Jodi S. Green for Defendant and Respondent.

\*          \*          \*

A subcontractor built a retaining wall that collapsed years later, causing damage to a nearby residential lot. The homeowner sued the subcontractor, obtained a default judgment, and then sued the subcontractor's insurance company to enforce the default judgment. (Ins. Code, § 11580, subd. (b)(2).)[1] The insurance company filed a motion for summary judgment arguing the homeowner's damages occurred long after the insurance policy had expired, and therefore the insurance company had no duty to cover the default judgment. The trial court agreed and granted the motion.

A trial court properly grants a motion for summary judgment when there are no triable issues of material fact. But where an insurance policy provides coverage based on the timing of an "occurrence," the determination of when the occurrence took place may itself be a question of fact. (See Rest., Liability Insurance, § 33, com. (1).)

Here, the homeowner alleges "continuous and progressive" damage began to occur shortly after the subcontractor built the retaining wall during the coverage period of the insurance policy. The insurance company disagrees. This is a triable issue of material fact. Thus, we reverse the trial court's order granting summary judgment.


I

FACTS AND PROCEDURAL BACKGROUND

From 2003 to 2004, subcontractor C.W. Poss Inc. (Poss) built retaining walls in Pointe Monarch, a housing development in Dana Point. Poss performed all the related excavation, ground, and grading work.

In 2006, Thomas Guastello purchased a home in the Pointe Monarch development. In January 2010, a retaining wall close to his lot suffered a "massive

---

[1] A judgment creditor may file a direct action against an insurer based on the insured's underlying insurance policy. (Ins. Code, § 11580, subd. (b)(2).) Further undesignated statutory references are to the Insurance Code.

failure" that caused "a major soil collapse and" further caused "the perimeter wall in [Guastello's] backyard to crack and separate."

*Court Proceedings*

In 2013, Guastello sued Poss (among other defendants). Guastello claimed Poss had negligently designed and constructed the retaining wall. Guastello alleged various damages including the diminution in the value of his home. AIG Specialty Insurance Company (AIG) notified Poss that it expressly disclaimed any duty to defend or indemnify Poss under the terms of its liability insurance policy. AIG claimed Guastello's alleged property damage occurred in January 2010 and was outside of Poss' coverage period (2003 to 2004).

In 2015, Guastello filed for a default judgment against Poss. Guastello attached the affidavit of geotechnical engineer, Steven E. Strickler, who had testified in a prior proceeding regarding the retaining wall (a lawsuit by the Pointe Monarch developer against Poss). Strickler opined the retaining wall had collapsed due to improper drainage, soil compaction, and substandard materials, all of which were within the scope of Poss' work. The trial court entered a default judgment of $701,133.17 in favor of Guastello against Poss (now insolvent).

In 2017, Guastello filed a lawsuit against AIG alleging three causes of action: 1) enforcement of the default judgment against Poss (§ 11580); 2) breach of the covenant of good faith and fair dealing; and 3) declaratory relief.

AIG filed a motion for summary judgment. Guastello filed an opposition. Following a hearing on the motion, the trial court found Guastello "did not experience property damage until well past the expiration of the policy." The court granted AIG's motion for summary judgment as to all causes of action because they "are predicated on" AIG's alleged "wrongful refusal to satisfy the judgment."

3

## II

## DISCUSSION

Guastello appeals from the trial court's order granting AIG's motion for summary judgment. Guastello argues there is a triable issue of material fact as to whether his property damage (an "occurrence") took place during the coverage period of Poss' general liability insurance policy with AIG. We agree.[2]

Summary judgment "provide[s] courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 844.) The moving party bears the initial burden to make a prima facie showing that no triable issue of material fact exists. (*Id.* at p. 843.) If this burden is met, the party opposing the motion bears the burden of showing the existence of disputed facts. (*Ibid.*)

We review the trial court's decision de novo. (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65, 67-68.) "In determining if the papers show that there is no triable issue as to any material fact, the court shall consider all of the evidence set forth in the papers . . . and all inferences reasonably deducible from the evidence, . . . summary judgment shall not be granted by the court based on inferences reasonably deducible from the evidence if contradicted by other inferences or evidence that raise a triable issue as to any material fact." (Code Civ. Proc., § 437c, subd. (c).)

In this discussion we will: A) review general principles of law regarding liability insurance coverage; B) consider the facts set forth in the record; and C) analyze the law as applied to the facts.

---

[2] Guastello also argues the trial court erred in finding he "lacked standing to bring a direct claim" under section 11580. AIG correctly responds that the court's ruling regarding standing only went to its duty to defend, which is not at issue in this appeal. (See *Clark v. California Ins. Guarantee Assn.* (2011) 200 Cal.App.4th 391, 397-398 [a third party lacks standing to bring a claim that an insurer has *a duty defend* the insured].) Guastello further argues Poss' current insolvency does not bar his claims; AIG concedes the issue.

4

*A. General Principles of Law Regarding Liability Insurance*

Liability (or third party) insurance generally covers insured parties for losses resulting from injury to other persons or resulting from "damage to property." (§ 108, subd. (a); *Delgado v. Interinsurance Exchange of Automobile Club of Southern California* (2009) 47 Cal.4th 302, 311 ["liability insurance is a contract between the insured and the insurance company to provide the insured . . . protection against liability for risks that are within the scope of the policy's coverage"].)

A liability insurance policy ordinarily imposes on the insurer both a duty to defend the first-party insured and a duty to "indemnify the insured . . . for harm proved within coverage." (*Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 957.) "'The issue is largely one of timing—what must take place *within the policy's effective dates* for the potential of coverage to be "triggered"?'" (*State of California v. Continental Ins. Co.* (2012) 55 Cal.4th 186, 196.)

A "claims-made" policy provides coverage only if the claim is made during the policy period. (*Carolina Casualty Ins. Co. v. L.M. Ross Law Group LLP* (2010) 184 Cal.App.4th 196, 206-207.) An "occurrence" policy provides coverage for damages that occur during the policy period, even if the claim is made after the policy has expired. (See, e.g., *Garriott Crop Dusting Co. v. Superior Court* (1990) 221 Cal.App.3d 783, 792 [policy covered adjacent land damage that occurred during the policy period even though the claimant purchased the land after the insured's policy had expired].)

"[I]t is well established that the time of the relevant 'occurrence' or 'accident' is not when the wrongful act was committed but when the complaining party was actually damaged." (*Whittaker Corp. v. Allianz Underwriters, Inc.* (1992) 11 Cal.App.4th 1236, 1241.) It is also a "settled rule . . . when continuous or progressively deteriorating damage or injury first manifests itself" the insurer "remains obligated to indemnify the insured for the entirety of the ensuing damage or injury." (*Montrose Chemical Corp. v. Admiral Ins. Co.* (1995) 10 Cal.4th 645, 686-687.)

5

*B. Relevant Evidence*

In its motion for summary judgment, AIG attached the underlying insurance policies. AIG had insured Poss under two consecutive Commercial General Liability policies effective from February 1, 2003, through December 3, 2004. It is undisputed Poss built the retaining wall and performed related excavation and grading work between May and October 2003.

The policies state AIG "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The policies state the insurance applies to "property damage" only if that damage is caused by an "occurrence" and the damage—not the "occurrence"—takes place during the policies' effective dates.

"Property damage" is defined as: "a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or [¶] b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."

"'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Where "*continuing or progressive*" property damage is at issue, the "'property damage' shall be deemed to be one 'occurrence', and shall be deemed to occur only when such . . . 'property damage' *first commenced*." (Italics added.)

Guastello's opposition to the motion for summary judgment included a declaration from W. Andrew Fennell, a licensed civil engineer. Fennell first stated his qualifications and what materials he relied on to form an opinion (diagrams, photographs, soil reports, etc.). Fennell then averred the following:

"c. Poss negligently and improperly constructed the Retaining Wall. Among other things, Poss failed to construct adequate drain connections and subdrains.

6

The blocks were improperly constructed and did not comply with design specifications. Poss failed to conduct an adequate quality control on the blocks. The compaction and geogrid were not in accordance with design specifications. The subdrain was not built in accordance with design specifications.

"d. Poss's negligence began causing *damage to its own work and the surrounding property including that eventually owned by Mr. Guastello*, within months of is substantial completion in 2003. Poss's negligently constructed Retaining Wall and related drainage facilities began to fail, and inadequate drainage and buildup of vegetation led to *continuous and progressive destabilization and damage to the surrounding lots, landscape and perimeter walls, including that eventually owned by Mr. Guastello, all beginning before the end of November 2004*.

"e. This *continuous and progressive destabilization and damage* eventually led in 2010 to the complete failure of the Retaining Wall. At the time of its failure in 2010, the continuous and progressive distress at the Retaining Wall included lateral displacement of the block units and bulging in the lower portions most affected by the water flow, water piping from the wall face, flushing of the soil and gravel materials onto the sidewalk and street from the wall base, slope settlement and fissures and some defluxion and *cracking rear yard walls* and land landscape.

"10. In my opinion, the damage and deterioration to Poss's own work and the resultant damage to the work *and property of others* was continuous and progressive by the end of November 2004, until the Retaining Wall ultimately failed." (Italics added.)

*C. Analysis and Application*

Here, Guastello included Fennell's declaration in response to AIG's motion for summary judgment. Fennell opined Poss negligently built the retaining wall (a latent construction defect), which caused "continuous and progressive destabilization and

7

damage" to Guastello's residential lot and perimeter wall "beginning before the end of November 2004." Conversely, AIG argues Guastello did not suffer any property damage (the occurrence did not take place) until the retaining wall collapsed in 2010, about seven years after the expiration of its insurance policy with Poss (December 2004).

In short, the timing of the alleged "occurrence" (the alleged damage to Guastello's property) within the meaning of Poss' general liability insurance policies is plainly a disputed issue of material fact. (See Rest., Liability Insurance, § 33, com. (1).) Thus, we reverse the trial court's ruling granting AIG's motion for summary judgment.

On appeal, AIG argues: "An expert's opinions are only admissible to defeat a motion for summary judgment if the expert's testimony would be admissible at trial in accordance with California Evidence Code section 720." AIG further argues: "Fennell's opinions fall short of California's admissibility standards because they lack any factual foundation, and are conclusory and speculative." We disagree.

Evidence Code section 720, subdivision (a), provides: "A person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates. *Against the objection of a party*, such special knowledge, skill, experience, training, or education must be shown before the witness may testify as an expert." (Italics added.) Evidence Code section 720, subdivision (b), further provides: "A witness' special knowledge, skill, experience, training, or education may be shown by any otherwise admissible evidence, including his own testimony."

Here, AIG did not make an evidentiary objection to Fennell's declaration in the trial court, so AIG has forfeited the issue in this court. (See *Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488, fn. 3 ["It is axiomatic that arguments not asserted below are waived and will not be considered for the first time on appeal"].) In any event, Fennell stated his education, training, and experience within his declaration before offering his expert opinion. Fennell also stated the basis, or foundation of his

opinion. Thus, Fennell's declaration testimony met the admissibility requirements of the Evidence Code and it did not matter that AIG failed to lodge a timely objection.

AIG also argues: "Fennell's opinions are further improper because Guastello offered them to rebut his own declarations regarding the damages he sustained." AIG further argues: "Fennell never personally inspected the retaining wall or the Property." However, AIG's arguments questioning the validity of Fennell's declaration go to the weight of his testimony (a factual issue for a potential jury), and not its admissibility (a legal issue for the court). (See *Polk v. Ford Motor Co.* (8th Cir. 1976) 529 F.2d 259, 271 ["The weakness in the underpinnings of such [expert] opinions may be developed upon cross-examination and such weakness goes to the weight and credibility of the testimony"].)

Finally, AIG argues in the "motion for default judgment, Guastello submitted a plethora of evidence establishing that the purported damage to Guastello's perimeter wall and backyard took place no earlier that 2010—more than five years after the Policies expired." AIG asserts that Guastello was estopped from later presenting Fennell's "contrary" evidence in his opposition to AIG's motion for summary judgment that the damage to Guastello's property actually began "before the end of November 2004." (See, e.g., *Ulrich v. State Farm Fire & Casualty Co.* (2003) 109 Cal.App.4th 598, 613 ["a judicial admission cannot be rebutted: [i]t estops the maker"].)

We disagree with the factual premise of AIG's argument. The evidence Guastello submitted in his challenge to AIG's motion for summary judgment was not necessarily "contrary" to the evidence Guastello had submitted in the earlier default judgment. To obtain the default judgment (against AIG's insured subcontractor Poss), Guastello submitted the affidavit of Strickler, who opined that the retaining wall had collapsed in 2010 due to improper drainage, soil compaction, and substandard materials, all of which were within the scope of Poss' work that was completed in 2004. Fennell's declaration in the later summary judgment proceeding was arguably consistent with a

9

latent construction defect theory of liability. That is, it is Guastello's theory of the case that the latent damages to his property were present in 2004 (due to Poss' alleged negligence), the damages were continuous and progressive, and the damages were not manifested or revealed until the catastrophic collapse of the retaining wall in 2010. Again, this is a contested issue of material fact.

In sum, Guastello's opposition to the motion for summary judgment raises a triable issue of fact as to the timing (or triggering) of AIG's coverage under Poss' insurance policies. The three causes of action alleged in Guastello's complaint (judgment creditor action under section 11580, breach of the covenant of good faith and fair dealing, and declaratory relief) are all predicated on this material fact.[3] Thus, the trial court erred by granting AIG's motion for summary judgment.

III

DISPOSITION

The order is reversed. Costs on appeal are awarded to Guastello.

MOORE, ACTING P. J.

WE CONCUR:

ARONSON, J.

GOETHALS, J.

---

[3] Generally, a third party may assume all the benefits of the first party to a liability insurance contract. (See *Hand v. Farmers Ins. Exchange* (1994) 23 Cal.App.4th 1847, 1856-1857 ["a third party beneficiary, in particular one so situated by virtue of section 11580, may enforce implied contractual covenants, including the covenant of good faith, to the extent that those covenants or their duties run in its favor"].)

10